Cote v. NH College, et al.          CV-95-308-M   06/20/97
                    UNITED STATES DISTRICT COURT

                     DISTRICT OF NEW HAMPSHIRE


Marc Cote,
      Plaintiff

      v.                                   Civil No. 95-308-M

New Hampshire College and
Phi Delta Theta Fraternity,
      Defendants


                         **O R D E R**


      Several motions in limine are currently pending.  They are

resolved as follows.


1.    **Defendant's Motion to Exclude Testimony of Neil J. Dougherty**
      **(Document No. 67)**

      Defendant objects to the anticipated testimony of

plaintiff's expert witness, Neil J. Dougherty, Ed.D., who is

expected to testify concerning the appropriate standard of care

for supervision of an oozeball tournament.  Specifically,

defendant contends that Mr. Dougherty's opinion that all

"horseplay" during college events will lead to dangerous activity

and should be prohibited as inadmissible under Federal Rule of

Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc.,

509 U.S. 579 (1993).  In response, plaintiff argues both that Mr.

Dougherty is qualified to provide his opinion on the appropriate

standard of care in supervising an oozeball event and that his opinion is well-accepted in his field.

Rule 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." For an expert opinion to be admissible, the expert witness must be qualified to give the opinion; the opinion must concern specialized knowledge; and the opinion must be helpful to the jury. See United States v. Shay, 57 F.3d 126, 132 (1st Cir. 1995). When an expert's opinion involves scientific knowledge (in contrast to technical or specialized knowledge), Rule 702 requires consideration of whether the opinion is based on scientifically valid reasoning or methodology. Daubert, 509 U.S. at 591-93. As Mr. Daugherty's opinion is apparently based on his knowledge and experience in the area of supervision of college events rather than scientific knowledge or methodology, the Daubert standard does not control its admissibility. See,e.g., United States v. Jones, 107 F.3d 1147, 1158 (6th Cir. 1997); United States v. Kayne, 90 F.3d 7, 11-12 (1st Cir. 1996), cert. denied, 117 S.Ct. 681 (1997); Compton v. Subaru of America, Inc., 82 F.3d 1513, 1518-19 (10th Cir. 1996), cert. denied, 117 S.Ct.

2

611 (1997); <u>Thornton v. Caterpillar, Inc.</u>, 951 F. Supp. 575, 577-78 (D.S.C. 1997).

Defendant contends that Mr. Dougherty's opinion is inadmissible because it is extreme and not based upon a well-accepted theory, although defendant does not challenge his qualification to give the opinion or argue that a standard for supervising college events is not a proper subject of expert opinion testimony in this case. Accordingly, defendant's objections to Mr. Dougherty's opinion about supervision of college events would be more appropriately addressed by cross examination. <u>See</u> <u>Kayne</u>, 90 F.3d at 12.

Defendant also argues that Mr. Dougherty should not be allowed to give an opinion as to causation--that the students' "horseplay" caused plaintiff's injuries. Plaintiff does not directly address defendant's concern, but states that Mr. Dougherty will testify "that the defendant College and the Director of Student Activities overseeing the event should not have allowed the horseplay (in the form of jumping, diving and throwing other participants into the mud) or any violation of the alcohol policy." Mr. Dougherty's opinion, according to plaintiff, is that defendant breached the standard of care to supervise the event. As Mr. Dougherty's testimony is apparently not being offered on the causation issue, further limitation at

this time is unnecessary, although the question may arise again at trial.

Defendant's First Motion to Exclude (document no. 57) is denied, but without prejudice to interposing an objection at trial.

## 2. **Plaintiff's Motion in Limine Regarding Defendant's Liability Expert (Document No. 48)**

Plaintiff challenges part of the expected testimony of defendant's expert witness, Joseph Schmerler, on grounds that he lacks expertise as to particular subject matter included in his opinion. Defendant intends to elicit testimony from Joseph Schmerler concerning the relationship between colleges and their students, including his opinion that the in loco parentis position of colleges has declined, about the risks and need for supervision and warnings in an oozeball tournament, and other related issues. Plaintiff argues that Mr. Schmerler lacks expertise concerning college organization and the relationship between colleges and their students, and so should not be allowed to testify on factual issues that are not within his expertise or firsthand knowledge.

In response, defendant identifies Mr. Schmerler as holding a bachelor of mechanical engineering degree from New York University and having "extensive knowledge in the area of aquatic

4

environments and injuries that can result from activities therein including diving activities." Mr. Schmerler, according to defendant, has publications and experience in the area of school activities involving pools and water sports. Plaintiff summarizes and quotes Mr. Schmerler's curriculum vitae as stating that Mr. Schmerler had experience with "'aquatic facilities and related activities'" and "activities 'related to swimming pools and bathing places'" and that he had consulted on "technical issues, business and product development, litigation and arbitration in matters relating to swimming pool design, equipment and construction as well as injuries sustained in and around aquatic environments." Neither party submitted supporting materials concerning Mr. Schmerler's qualification to give an expert opinion about the challenged subjects.

Based on the information presented in the parties' pleadings, Mr. Schmerler seems to lack any experience in or expertise concerning the organization of colleges or their relationships with their students and student groups. Therefore, he is not qualified under Rule 702 to present expert opinion on those subjects.

Plaintiff also objects to Mr. Schmerler's expected opinion that the danger of an injury such as that suffered by plaintiff was "exceptionally remote" based on responses to inquiries sent

by defendant's counsel to other colleges concerning their experiences with oozeball tournaments. It is unclear what expertise Mr. Schmerler would use to arrive at his conclusion that would assist the jury in understanding the evidence. Although it is likely that such an opinion is outside the scope of Rule 702, that evidentiary decision should be made with the benefit of both a presentation of Mr. Schmerler's qualifications and the trial context in which the testimony is offered.

Plaintiff's motion regarding defendant's liability expert (document no. 48) is granted in part and denied in part without prejudice to renewal of the objection at trial.

### 3.    Plaintiff's Motion in Limine Concerning Letters       (Document No. 47)

Defendant included as exhibit "M" in support of its motion for summary judgment (document no. 27) copies of six letters received from other colleges concerning their experiences with mud volleyball events on their campuses. Apparently the letters were sent in response to inquiries made by defendant's counsel on May 21, 1996, requesting information. Each of the six responding colleges states that it had no significant injuries related to mud volleyball events.

Plaintiff moves to exclude the letters and any reference to them on grounds that plaintiff lacks particular information about

6

the letters and that the letters are hearsay and unfairly prejudicial. Defendant contends that the letters are relevant to the foreseeability of plaintiff's injury, are not hearsay, and also could be used to impeach plaintiff's witnesses on the issue of whether oozeball is dangerous.

Plaintiff's concerns about background information related to the letters should have been (and perhaps have been) satisfied through discovery. If, as it appears from the parties' pleadings, neither the letters nor these colleges' experiences with oozeball were known to defendant in 1994 when plaintiff was injured, they are not relevant to <u>defendant's</u> understanding of the risks associated with an oozeball event. Further, if the letters were offered for the truth of the statements therein (concerning those six colleges experience with oozeball events), they are likely to be inadmissible hearsay unless defendant can show that an exception would apply. Fed. R. Civ. P. 801(c) and 802. Thus, whether the letters will be admissible depends upon the context at trial in which they are actually offered, and the issue must be deferred until then. <u>See, e.g.</u>, <u>Gill v. Thomas</u>, 83 F.3d 537, 540-41 (1st Cir. 1996) (discussing review of evidentiary issues denied in limine).

7

Plaintiff's motion regarding results of survey (document no. 47) is denied without prejudice to challenge the admissibility of the letters if they are introduced at trial.

**4.   Plaintiff's Motion in Limine Regarding Separate Existence of CAPE (Document No. 49)**

Plaintiff seeks a ruling to preclude defendant from arguing that the student organization known as CAPE was, at the time in question, a separate entity from the college and that the college had no duty to supervise CAPE's activities.  After filing his motion, plaintiff amended his complaint to include claims that focus on issues concerning defendant's relationship with and responsibility for CAPE.  CAPE's status and relationship with the college remains a primary issue in this case that cannot be resolved upon plaintiff's inadequately supported motion.  Accordingly, plaintiff's motion in limine regarding the separate existence of CAPE (document no. 49) is denied.

**5.   Defendant's Motions in Limine Concerning Alcohol (Documents Nos. 53 and 54)**

Defendant seeks rulings precluding any reference to alcohol as a factor in this case and any reference to the name of plaintiff's oozeball team, "The Drunks."  In support of its motion, defendant argues that there is only minimal evidence that

alcohol was consumed at the oozeball event, no evidence that the college was aware of alcohol consumption, and plaintiff does not allege that alcohol consumption contributed to his injuries. Under those circumstances, defendant argues, evidence of alcohol consumption is not relevant, or at least that references to alcohol consumption should be excluded as more unfairly prejudicial than probative.   Fed. R. Civ. P. 402 and 403.

Defendant is correct that plaintiff's claims are not explicitly based on allegations that alcohol consumption was a factor in causing the accident.[1]  If plaintiff's claims were interpreted broadly, however, alcohol consumption at the event could be relevant to the college's performance of any duty it may have owed to supervise, and such references would likely be relevant.

Plaintiff states that witnesses will testify that the "horseplay" that led to his injury began with members of a fraternity, who were congregating and getting drinks from a vehicle parked near the field rather than from CAPE-supplied nonalcoholic refreshments.  Plaintiff also asserts that witnesses

---

[1]The only references to alcohol in plaintiff's Amended Consolidated Complaint are in counts that are no longer claims in the case: Count IV (delegation of responsibility for an ultrahazardous activity) dismissed by summary judgment in favor of defendant, and Count V (negligence--Phi Delta Theta fraternity) judgment entered in favor of the fraternity on the parties' stipulation of dismissal.

9

saw fraternity members and others drinking from "stadium" cups rather than from the cans of soda provided by CAPE, and that plaintiff was offered, but refused, an alcoholic drink. In addition, plaintiff states that the oozeball event had a history of problems with alcohol. Plaintiff contends that the college knew or should have known that alcohol would be and was being consumed in violation of college rules and failed to intervene to enforce the no-alcohol requirement as a part of its failure to properly supervise the event.[2]

Plaintiff's proffer relies on inferences rather than direct evidence of alcohol consumption. Both sides seem to agree that neither plaintiff, nor his friends who were involved in throwing him in the mud, had consumed alcohol at the event or were under the influence of alcohol. If mere suggestions of alcohol consumption were allowed at trial, the jury might make assumptions based on inferences that would be either unfounded or unrelated to plaintiff's claim: i.e. that plaintiff and/or his friends were drunk when the accident occurred or that the college and/or CAPE allowed unrestrained drinking and drunken behavior in

---

[2]The parties both devote part of their pleadings to complaints about the other's conduct during discovery. Since the parties do not request relief, the discovery issues are not addressed.

10

violation of college rules which behavior was proximately related to the injuries sustained.

In these circumstances, suggestions or references to alcohol consumption, absent more reliable evidence that alcohol was a factor which contributed to plaintiff's accident, are likely to be more unfairly prejudicial to defendant than probative relative to any element of plaintiff's case. See Fed. R. Civ. P. 403. Ordinarily, an evidentiary ruling depends on the evidence to be presented at trial. Because this is a close question, the evidentiary ruling should be made at trial, when the extent of plaintiff's evidence and the relevance of alcohol consumption will be clear. Accordingly, defendant's motions (document nos. 53 and 58), are denied without prejudice.

## 6. Defendant's Motion to Exclude Particular Testimony of Dr. Robert Menter (Document No. 56)

Dr. Robert Menter was plaintiff's treating physician at Craig Hospital in Colorado. During his videotaped deposition, defense counsel asked Dr. Menter whether he had ever treated a patient for a spinal cord injury that occurred in a mud volleyball game and he said that he had not. In response, plaintiff's counsel asked Dr. Menter whether he had ever treated or heard of a patient who had received a serious spinal cord injury from sliding into mud. Dr. Menter recalled a patient who

11

had suffered an injury similar to plaintiff's during a baseball team hazing incident that required sliding into a mud hole.

Defendant seeks to exclude Dr. Menter's description of the baseball player's injury on grounds that the incident is irrelevant to plaintiff's case. Plaintiff seeks to exclude Dr. Mentor's earlier statement, elicited by defense counsel, that he was not aware of a patient having been injured in a mud volleyball game, and agrees that the baseball incident is only relevant to provide a proper context for the earlier statement. Plaintiff contends that Dr. Mentor's lack of experience with patients injured during mud volleyball games is irrelevant to plaintiff's claim, which is not that mud volleyball is dangerous but that it was made dangerous by a lack of supervision of this particular event which, plaintiff contends, is more similar to the baseball player's injury in the mud during unsupervised hazing. In addition, plaintiff was not injured as a participant during a mud volleyball game; he was an observer between games.

Given the context provided by the parties, neither of the challenged statements seems likely "to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence." Fed. R. Civ. P. 401. Since the statements are part of a videotape deposition which will be presented at trial, the context of the

12

statements is fixed.  In that context, the statements are not relevant to the case and are likely to confuse the jury by suggesting, improperly, either that the college was sufficiently careful because mud volleyball events do not result in spinal injuries or, conversely, that it was careless because mud sliding events tend to be dangerous.  Because the statements as presented are irrelevant, and to avoid confusion and unfair prejudice, both statements shall be excluded.  See Fed. R. Civ. P. 401 and 403.

Defendant's motion (document no. 56) is granted.  The lines marked in yellow in plaintiff's transcript excerpt of Dr. Mentor's videotaped deposition shall be excluded from evidence at trial.

7.    **Defendant's Motion to Exclude Testimony of Dr. William Burke (Document No. 58)**

Defendant objects to the expert opinion of Dr. William Burke, who did a rehabilitation evaluation of plaintiff, concerning plaintiff's future work ability.  Seizing on Dr. Burke's statement in his deposition that he had not done a vocational evaluation of plaintiff, defendant contends that Dr. Burke's opinion is unreliable and inadmissible under Federal Rule of Civil Procedure 702 and the Daubert standard.

As was discussed in paragraph one of this order, the Daubert standard is not applicable in evaluating technical or specialized

13

knowledge that may be provided by expert opinion.  Dr. Burke holds a Ph.D. in rehabilitation services and is a certified rehabilitation counselor.  His opinion is based on his experience and specialized knowledge in "the analysis, treatment, planning, and case management of individuals with brain and spinal cord injury and other neurologic disorders."  William Burke's Curriculum Vitae, attached to plaintiff's objection (document no. 71).  Accordingly, the Daubert scientific methodology issues are not a part of a Rule 702 evaluation of Dr. Burke's opinion.  Defendant fails to explain the significance of a vocational evaluation in the context of Dr. Burke's opinion, or to provide any authority that the lack of a vocational evaluation undermines the reliability of the opinion.

In addition, Defendant overstates Dr. Burke's opinion to be "regarding the plaintiff's inability to work for the remainder of his life."  Defendant's memorandum with his motion (document no. 58)  Instead, Dr. Burke's actual opinion, based on his occupational analysis of plaintiff's "realistic access to the labor market," is stated in the excerpt of Dr. Burke's report attached to defendant's motion as exhibit B:

> Considering these restrictions [physical limitations] in addition to the variables noted above [not included in defendant's excerpt] the results of this analysis indicate that Marc has virtually lost all

14

> access to the labor market in the future.
> This analysis was not able to consider the
> intangible variables in Marc's case such as
> his motivation, determination, and future
> social and professional networks.  However,
> it is clear both from the spinal cord injury
> research and this analysis that the
> likelihood that Marc will maintain
> competitive employment in the future is
> extremely low.

As plaintiff explains in his objection, "competitive employment" is not necessarily equivalent to any kind of employment, work, or activity for limited periods of time.  To the extent that Dr. Burke's opinion may conflict with that of Dr. Menter, that will be an appropriate subject for cross examination.

Defendant's Motion to Exclude (document no. 58) is denied.


## 8.     Defendant's Motion Regarding Personnel Evaluation

Defendant moves to exclude any evidence of the safety standards section of the college's professional performance review form pertaining to Deborah Hubbard on grounds that it is unfairly prejudicial.  Plaintiff argues that the rating is relevant to the college's supervision of the oozeball event because Hubbard was the school official with authority to oversee student activities.  Plaintiff interprets the evaluation, incorporating part of its language, as: "the criticism of Hubbard is that she failed to 'take corrective action when needed' which

15

is the very claim made by the plaintiff in this case." In response, defendant represents that a college official will explain that Hubbard's appraisal score was lower than it should have been because safety was not an integral part of Hubbard's position.

The evaluation form (defendant has submitted Hubbard's forms covering the years from 1990 through 1993) explains that each appraisal score includes both a rating and a weight value. Ratings range from 1 (unacceptable) through 3 (expected level of performance) to 5 (highly superior). Each standard characteristic is also evaluated for its importance to job performance with assigned weight values of 1 through 3 (less important, standard, more important). The appraisal score for each standard characteristic is then computed by multiplying the rating and the weight.

The form provides the following safety standard characteristic: "Displays constant concern & takes corrective action when needed to enhance the safety of the work environment." For Hubbard's job, the safety standard was assigned a weight of 2--standard importance to the job--for the years 1990 through 1992. In the evaluation for 1993, dated January 1994, the weight value was dropped to 1. She was evaluated at a 3 rating--"Expected level of performance. A

16

competent employee who performs the requirements of the position" for all years of evaluation. Thus, Hubbard's overall safety standard score for the years 1990 through 1992 was 6 and for 1993 it was 3. The change in score from 6 to 3, as defendant explains, was due to the change in the weight value not a change in Hubbard's performance. Accordingly, plaintiff's negative interpretation of Hubbard's safety evaluation appears to be unsupported by the information in the form.

Whether the forms or individual appraisal scores pertaining to Hubbard's performance will be admissible at trial depends upon the context. Plaintiff is cautioned, however, that its negative interpretation of the information appears to be unsupported.

Defendant's motion (document no. 55) to exclude the evidence is denied without prejudice to its renewal at trial.

## 9. **Defendant's Objection to Two Videotapes (Document No. 80.2)**

Plaintiff intends to use two videotapes at trial, one of which is a "day in the life" video and the other is of plaintiff's last rehabilitation therapy session on June 14, 1995. Defendant objects to both videos on grounds that they are prejudicial, designed to inflame the passion of the jury, and cumulative of other evidence.

Plaintiff represents that the segment of the "day in the life" video that he intends to use at trial is thirty-six minutes long and was edited from film of his actual morning routine during a two to three hour period. He states that the film shows his activities with his mother that are necessary to getting up, dressed, and into his wheelchair. Defendant contends that the "day in the life" video is "amateurish" and "overly prejudicial."

Other courts have allowed "day in the life" videotapes of a plaintiff's activities and treatment to show the effect of plaintiff's injury when the videos presented accurate, relevant, and not unfairly prejudicial evidence of plaintiff's injury or condition. See, e.g., DeBiasio v. Illinois Cent. Railroad, 52 F.3d 678, 687 (7th Cir. 1995), cert. denied, 117 S.Ct. 611 (1996); Bannister v. Town of Noble, Okla., 812 F.2d 1265, 1270 (10th Cir. 1987); Walls v. Armour Pharmaceutical Co., 832 F. Supp. 1505, 1508-09 (M.D.Fla. 1993), aff'd, 53 F.3d 1184 (1995); Strach v. St. John Hospital Corp., 408 N.W.2d 441, 453 (Mich.Ct. App. 1987); Ocasio v. Amtrak, 690 A.2d 682, 685 (N.J. Super. Ct.App.Div. 1997); Arnold v. Burlington Northern R.R., 748 P.2d 174, 176 (Or.Ct. App. 1988).

In this case, defendant contends that plaintiff's videos are both "overly prejudicial" and cumulative. As the evidentiary

18

context for showing the videos can only be determined at trial, no ruling can be made on whether they are cumulative until then. As to the prejudicial effect of the videos, Rule 403 aims at evidence that presents a "danger of <u>unfair</u> prejudice." (Emphasis added.) "It is, of course, axiomatic that '[a]ll evidence is meant to be prejudicial; elsewise, the proponent would be unlikely to offer it.'" <u>Espeaignnette v. Gene Tierney Co., Inc.</u>, 43 F.3d 1, 7 (1st Cir. 1994) (quoting <u>Daigle v. Maine Medical Ctr., Inc.</u>, 14 F.3d 684, 690 (1st Cir. 1994)). Thus "overly prejudicial" evidence, although damaging to one side or the other, is not proscribed by the rule.

Defendant does not explain why the "amateurish" quality of the video should preclude its admissibility or what in particular about the video is <u>unfairly</u> prejudicial. Without more specific objections by defendant, the court, at present, declines to view the "day in the life" video provided by the plaintiff for admissibility.

Defendant's motion (document 80.2) is denied without prejudice to its renewal at trial.

19

**SO ORDERED.**


                                             _____
                                             Steven J. McAuliffe
                                             United States District Judge

June 20, 1997

cc:   Andrew D. Dunn, Esq.
       Kenneth G. Bouchard, Esq.