516 S.E.2d 769

The WEST VIRGINIA DIVISION OF HIGHWAYS, a Corporation, Petitioner Below, Appellee,

v.

Jack BUTLER and the Nicholas County Sheriff/Treasurer, Respondents Below,

Jack Butler, Respondent Below, Appellant.

No. 25791.

Supreme Court of Appeals of West Virginia.

Submitted May 11, 1999.

Decided June 15, 1999.

G. Alan Williams, Esq., West Virginia Division of Highways, District Attorney, Lewisburg, West Virginia, Attorney for the Appellee.

William C. Martin, Esq., Cooper and Martin, Sutton, West Virginia, Attorney for Butler.

MAYNARD, Justice:

This is an appeal from a final order of the Circuit Court of Nicholas County which entered judgment for the appellant, Jack Butler [1], in the total sum of $26,600.00 which was the sum returned by the jury at the close of eminent domain proceedings as just compensation for land taken by the appellee West Virginia Department of Transportation, Division of Highways.[2] The appellant raises three assignments of error which he alleges resulted in an unfair trial. After careful consideration of the issues, we reverse and remand for proceedings consistent with this decision.

## I.

### FACTS

The appellant, Jack Butler, owned twenty acres of undeveloped land located along U.S. Route 19 in Nicholas County. In order to widen U.S. Route 19 to four lanes, the appellee, West Virginia Department of Transportation, Division of Highways (DOH), instituted eminent domain proceedings, pursuant to W.Va.Code § 54-2-14a (1981), in the Circuit Court of Nicholas County for the purpose of acquiring title to 3.665 acres of the appellant's property.

By order of March 4, 1996, the Circuit Court of Nicholas County found that the DOH had a lawful right to take the subject property for public purposes. The circuit court ordered the DOH to pay to the clerk of the court $24,300.00, the amount deemed by the DOH to be just compensation for the property, pending the completion of the report of the condemnation commissioners appointed to ascertain the property's value.

By report of May 1, 1997, the commissioners found that $30,000.00 would be just compensation for the 3.665 acre tract of land. Both the DOH and the appellant excepted to this sum and demanded a jury trial which was held in January 1998 in the Circuit Court of Nicholas County. The crux of the issue at trial was whether the subject tract of land should be valued as commercial property. The appellant testified that he purchased all twenty acres of the property in 1986 for $20,000.00 for investment purposes. Gary Herndon, a residential real estate appraiser, and Calvert Estill, a general real estate appraiser and consultant, testified that all 3.665 acres constituted commercial property worth $70,000.00 an acre, making the entire 3.665 acre tract worth $257,000.00. David Heater, a corporate secretary and real estate manager for Go–Mart Incorporated testified that Go–Mart considered purchasing the tract at issue in 1990 in order to build a convenience store or truck stop but chose to forego the purchase in light of the DOH's plans to widen U.S. Route 19. The appellant sought to

---

1. Also listed as parties below were the Nicholas County Sheriff/Treasurer and the Gassaway Bank. These parties were originally named as respondents below for the purpose of unpaid and owed real property taxes and a deed of trust, the value of which was to be paid out of the jury verdict. By order of March 29, 1996, the Bank of Gassaway was dismissed as a respondent.

2. Apparently this order also constitutes a denial of the appellant's motion for a new trial filed on February 10, 1998 although the order does not address the motion.

have Mr. Heater qualified as an expert in site selection for convenience stores so that Mr. Heater could testify as to the value of the property at issue. The circuit court excluded the testimony based on the fact that Mr. Heater was not a certified or licensed appraiser.

Evidence on behalf of the DOH consisted of the testimony of Gordon Cole, a general real estate appraiser, that only .38 acres of the subject tract consisted of commercial property. He valued this portion of the property at $73,000.00 an acre and the remaining 3.29 acres at $405.00 an acre, making the total value of the property $24,350.00. David Casto, a general real estate appraiser, testified that he concurred with Mr. Cole's appraisal.

At the close of the evidence, the jury returned a verdict of $26,600.00. The appellant's motion for a new trial was denied by the circuit court by order of March 31, 1998 in which judgment for the DOH was rendered in the total sum of the verdict rendered by the jury. The appellant now appeals this final order.

## II.

## DISCUSSION

■■■ The first issue raised by the appellant is whether the circuit court erred in refusing to allow David Heater, the corporate secretary and real estate manager for Go–Mart Incorporated, to testify as an expert witness regarding his opinion of the value of the property. Concerning this Court's standard of reviewing the circuit court's decision to exclude this testimony, we have previously stated that "[t]he admissibility of testimony by an expert witness is a matter within the sound discretion of the trial court, and the trial court's decision will not be reversed unless it is clearly wrong." Syllabus Point 6, *Helmick v. Potomac Edison Co.*, 185 W.Va. 269, 406 S.E.2d 700 (1991), *cert. denied*, 502 U.S. 908, 112 S.Ct. 301, 116 L.Ed.2d 244 (1991).

As noted above, the DOH objected to Mr. Heater's testimony on the value of the property at issue, and the circuit court excluded the testimony, on the ground that Mr. Heat-er was not a certified or licensed appraiser and thus could not give an opinion as to the value of the property. The appellant correctly argues that the circuit court erred in excluding the testimony because Mr. Heater met *W.Va.R.Evid.* 702 qualifications of knowledge, experience, and training.

Article 14, Chapter 37 of the W.Va.Code is titled "The Real Estate Appraiser Licensing and Certification Act," *see* W.Va.Code § 37–14–1 (1990). W.Va.Code § 37–14–3(a) (1991) states, in relevant part, that "it is unlawful for any person, for compensation or valuable consideration, to prepare a valuation appraisal or a valuation appraisal report relating to real estate or real property in this state without first being licensed or certified as provided in this article." According to W.Va. Code § 37–14–2(a) (1992), in part, " '[a]ppraisal' means an analysis, opinion or conclusion prepared by a real estate appraiser relating to the nature, quality, value or utility of specified interests in, or aspects of, identified real estate or identified real property." Finally, W.Va.Code § 37–14–2(c) defines "[a]ppraisal report" as "any communication, written or oral, of an appraisal" and states that "the testimony of an appraiser dealing with the appraiser's analyses, conclusions or opinions concerning identified real estate or identified real property is deemed to be an oral appraisal report." The circuit court found that these code sections prohibit in-court opinion testimony as to the value of property by anyone other than a licensed or certified appraiser.

■■■ This same issue was recently addressed by this Court in *Teter v. Old Colony Co.*, 190 W.Va. 711, 441 S.E.2d 728 (1994) where we rejected the appellant's assertion "that W.Va.Code, 37–14–2 and –3 (1991) . . . preclude appraisal testimony in court unless the appraiser is licensed under the [Real Estate Appraiser Licensing and Certification] Act." *Teter*, 190 W.Va. at 723, 441 S.E.2d at 740. In analyzing this issue in *Teter*, we first determined that there is a certain ambiguity in this code section as to the extent of its coverage under the phrase "the testimony of an appraiser dealing with the appraiser's analyses . . . is deemed to be an oral appraisal report." Because this code

section is ambiguous and in derogation of the common law, we found that it should be strictly construed. Accordingly, we concluded that "W.Va.Code, 37–14–1, *et seq.*, is not designed to prevent an expert otherwise qualified under Rule 702 of the West Virginia Rules of Evidence from testifying with regard to the value of real property or the damages that may have resulted to it." Syllabus Point 8, *Teter.* We noted further, however, that even if W.Va.Code § 37–14–1 *et seq.*, unambiguously prohibited anyone but a licensed or certified appraiser from testifying with regard to the value of real estate in a court proceeding, this prohibition would be contrary to the Rules of Evidence promulgated by this Court, pursuant to article eight, section three of our Constitution, and, thus, the prohibition would be void. For support, we quoted Syllabus Point 1 of *Stern Brothers, Inc. v. McClure,* 160 W.Va. 567, 236 S.E.2d 222 (1977) which states:

> Under Article VIII, Section 8 of the Constitution of West Virginia (commonly known as the Judicial Reorganization Amendment), administrative rules promulgated by the Supreme Court of Appeals of West Virginia have the force and effect of statutory law and operate to supersede any law that is in conflict with them.

It is clear, therefore, that issues of expert testimony in general, and the specific issue before us in the instant case, is controlled by Rule 702 of the West Virginia Rules of Evidence. "Rule 702 ... is the paramount authority for determining whether or not an expert is qualified to give an opinion." Syllabus Point 6, in part, *Mayhorn v. Logan Medical Foundation,* 193 W.Va. 42, 454 S.E.2d 87 (1994). According to Rule 702:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience,

training, or education may testify thereto in the form of an opinion or otherwise. The DOH concedes that W.Va.Code § 37–14–1 *et seq.*, do not prevent Mr. Heater from giving opinion testimony regarding the value of the property at issue, but avers that Mr. Heater's testimony should nevertheless be excluded under *W.Va.R.Evid.* 702. The DOH bases this contention on its allegation that Mr. Heater lacked sufficient knowledge of the facts to state an opinion thereon. According to the DOH, Mr. Heater had no knowledge of how much land the DOH was taking, which part of the property was being taken, how much and where the residue of the property would be situated, and the amount of damages, if any, to the residue.[3] Therefore, concludes the DOH, Mr. Heater had no basis on which to form an opinion, and the circuit court did not abuse its discretion in excluding his opinion testimony.

Historically, this Court has "been very liberal with regard to the qualifications necessary for an expert witness to testify on the value of property in condemnation proceedings." *West Virginia Dept. of Highways v. Sickles,* 161 W.Va. 409, 413, 242 S.E.2d 567, 571 (1978), *overruled on other grounds, W.Va. Dept. of Highways v. Brumfield,* 170 W.Va. 677, 295 S.E.2d 917 (1982) (citation omitted). Generally, "anyone having special knowledge of real estate, such as the owner who may have some peculiar qualification or more knowledge than jurors are ordinarily supposed to possess, can generally express an opinion as to its value." *Leftwich v. Wesco Corporation,* 146 W.Va. 196, 208, 119 S.E.2d 401, 408–409 (1961), *overruled on other grounds, Bradley v. Appalachian Power Co.,* 163 W.Va. 332, 256 S.E.2d 879 (1979). *See also, Chesapeake & Ohio Ry. Co. v. Johnson,* 137 W.Va. 19, 26, 69 S.E.2d 393, 397 (1952) ("... opinion evidence of market value as to property being acquired in condemnation proceedings is received with great liberality[.]"); Syllabus Point 1, *United Fuel*

---

3. The DOH supports its argument here by pointing, in part, to the following portion of the trial transcript:

> *DOH counsel:* [At the time you looked at the Butler property and considered buying it], did you have access to any Division of Highways right-of-way maps, Petitioner's Exhibit No. 2

here [full size plan sheet], that showed the extent of the right of way and how much the Butlers actually owned?
> *Heater:* At the first time I looked at the property, no. There weren't maps, to my knowledge, even drawn up at the time.

*Gas Co. v. Allen,* 137 W.Va. 897, 75 S.E.2d 88 (1953) ("In a proceeding in eminent domain the testimony of a witness, bearing on damages to the residue of the property sought to be taken, whose qualifications are meager and whose opinion is to some extent based upon hearsay, but who to some extent is qualified, is admissible in evidence over objection."); Syllabus Point 4, *State Road Commission v. Darrah,* 151 W.Va. 509, 153 S.E.2d 408 (1967) ("In an eminent domain proceeding, a nonexpert witness is not competent to express an opinion concerning the market value of the land taken or the damages to the residue, beyond benefits, unless he has some peculiar qualification or more knowledge in relation to the subject of such opinion than jurors are ordinarily supposed to have."); *Ellison v. Wood & Bush Company,* 153 W.Va. 506, 518, 170 S.E.2d 321, 329 (1969) ("Opinion evidence dealing with value and damages to land is admissible if the witness has some peculiar qualification or more knowledge than jurors are ordinarily supposed to have" (citations omitted).); *State Road Commission v. Ferguson,* 148 W.Va. 311, 134 S.E.2d 900 (1964); and *State v. Sanders,* 128 W.Va. 321, 36 S.E.2d 397 (1945).

Rule 702 of the West Virginia Rules of Evidence is generally consistent with this preexisting common law. *See Reager v. Anderson,* 179 W.Va. 691, 700, n. 4, 371 S.E.2d 619, 628, n. 4 (1988). Specifically, the liberality in the admission of expert testimony is retained. Rule 702 permits the admission of expert testimony if the witness qualifies as an expert upon the subject in which he or she is called to testify, and the testimony can assist the trier of fact. As under our prior law, the standard for qualifying as an expert is a permissive one in that a witness may be qualified as an expert by "knowledge, skill, experience, training, or education." *W.Va.R.Evid.* 702. "If a witness qualifies on any of the grounds listed in Rule 702, [he or she] should be allowed to testify as an expert." Franklin D. Cleckley, *Handbook On Evidence For West Virginia Lawyers,* Vol. 2, § 7–2(A)(1), p. 28 (3rd ed. 1994).

■ To summarize what we have said thus far, we hold that Rule 702 of the West Virginia Rules of Evidence is the paramount authority for determining whether an expert is qualified to give an opinion on the value of real estate in an eminent domain proceeding. Under the permissive standard for the admission of expert testimony set forth in Rule 702 of the West Virginia Rules of Evidence, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify to the value of real property in an eminent domain proceeding if the proffered testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. We will now apply this rule to the specific facts of this case.[4]

**4.** It is important to note that when scientific evidence, in contrast to the specialized knowledge in the instant case, is proffered pursuant to Rule 702, circuit courts must take additional steps to guarantee the relevance and reliability of the evidence. In Syllabus Point 4 of *Gentry v. Mangum,* 195 W.Va. 512, 466 S.E.2d 171 (1995), we stated:

When scientific evidence is proffered, a circuit court in its "gatekeeper" role under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and *Wilt v. Buracker,* 191 W.Va. 39, 443 S.E.2d 196 (1993), *cert denied,* [511] U.S. [1129], 114 S.Ct. 2137, 128 L.Ed.2d 867 (1994), must engage in a two-part analysis in regard to the expert testimony. First, the circuit court must determine whether the expert testimony reflects scientific knowledge, whether the findings are derived by scientific method, and whether the work product amounts to good science. Second, the circuit court must ensure that the scientific testimony is relevant to the task at hand.

We further explained in Syllabus Point 6 of *Gentry* that the question of admissibility under *Daubert* and *Wilt:*

only arises if it is first established that the testimony deals with "scientific knowledge." "Scientific" implies a grounding in the methods and procedures of science while "knowledge" connotes more than subjective belief or unsupported speculation. In order to qualify as "scientific knowledge," an inference or assertion must be derived by the scientific method. It is the circuit court's responsibility initially to determine whether the expert's proposed testimony amounts to "scientific knowledge" and, in doing so, to analyze not what the experts say, but what basis they have for saying it.

In the recent case of *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, —, 119 S.Ct. 1167, 1174, 143 L.Ed.2d 238, 249 (1999), the United States Supreme Court held that the special obli-

■ Plainly, the circuit court erred in excluding Mr. Heater's testimony concerning the value of the condemned land for the reason that Mr. Heater was not a certified or licensed appraiser. The dispositive issue, therefore, is whether Mr. Heater qualifies as an expert under Rule 702. Mr. Heater testified that his job is to select properties on which to build convenience stores and truck stops for Go–Mart Incorporated. This job includes both the buying and selling of real estate. He testified further that he has been involved in property selection for twenty years, and he has purchased real estate for Go–Mart all over West Virginia and Ohio. In addition, he has taken appraising classes as well as classes on property selection through the National Association of Convenience Stores. All of this leads us to conclude that Mr. Heater is qualified to testify as an expert on the value of the property at issue because of his knowledge, skill, experience, training and education in the areas of property selection and appraisal. There is no dispute that Mr. Heater's testimony would assist the trier of fact in determining the fact in issue.

■ As noted above, the DOH complains that Mr. Heater lacked sufficient knowledge to testify as an expert. Any lack of knowledge, however, goes to the weight of the testimony and not its admissibility. Once Mr. Heater testifies as to the value of the property, the DOH can cross-examine him and reveal any weaknesses in his opinion. "Once a witness is permitted to testify, it is within the province of the jury to evaluate the testimony, credentials, background, and qualifications of the witness to address the particular issue in question. The jury may then assign the testimony such weight and value as the jury may determine." *Cargill v. Balloon Works, Inc.,* 185 W.Va. 142, 147, 405 S.E.2d 642, 647 (1991). We conclude, therefore, that the circuit court was clearly wrong in excluding the testimony of David Heater as to the value of the appellant's property. Accordingly, we reverse and remand on this issue.

Although we dispose of this case on the issue discussed above, we deem it necessary to decide the remaining issues raised by the appellant in order to provide direction to the circuit court on remand. The second and third issues concern jury instructions on the weight to be given evidence of the appellant's purchase price of the subject property in determining the property's fair market value at the time of the take. The appellant first contends that the circuit court erred in refusing to give his proffered jury instruction No. 1 which states:

The price which Mr. Butler paid to acquire the property is not the measure of damages in this case and should not be considered in your deliberations unless you find that transaction is representative of the fair market value of the property for its highest and best use at the time it was taken by the Department of Transportation.

The circuit court instead gave the following instruction to which the appellant also objects:

The price which Mr. Butler paid to acquire the property in 1986 is not the measure of damages in the case. It is one of the elements that can be considered in determining the value of the property, but what you are to determine is the fair market value of the property for its highest and best use at the time it was taken by the Department of Transportation.

Thus the true measure of just compensation to the landowner is the fair market value of the land taken on the 4th day of March, 1996, and the damage to the residue, if any.

The record discloses that the appellant testified on cross-examination concerning the price he paid for the subject property. At that time, appellant's counsel did not object to the admission of the evidence. The purchase price evidence did not become an issue until the formulation of jury instructions. Accordingly, the appellant now couches the issue of the probative value of this evidence in terms of whether the proper jury instruc-

gation upon a trial judge recognized in *Daubert* to "ensure that any and all scientific testimony ... is not only relevant, but reliable" applies to

all expert testimony. We decline to adopt the *Kumho* analysis in this case.

tions were given. We note, however, that the question of the probative value of the original purchase price in an eminent domain proceeding usually is whether the evidence is admissible into evidence in the first instance. Therefore, we condense the appellant's final assignments of error into the single issue of whether the price paid by the appellant for the subject property and adjoining acres is admissible into evidence as probative of the fair market value of the 3.665 acres involved in the eminent domain proceeding.

The appellant contends that purchase price evidence is improper in the instant case because the purchase occurred ten years previously, covered twenty acres which is substantially more than the 3.665 acres taken, and was forced insofar as the seller was anxious to sell for financial reasons. *Citing West Virginia Dept. of Highways v. Mountain Inc.*, 167 W.Va. 202, 279 S.E.2d 192 (1981). The DOH counters that *Mountain Inc.* is factually distinguishable from the instant case, and the purchase price evidence is relevant.[5]

■■■■ We previously have stated that in an eminent domain proceeding to take private property for public use, "[i]t is within the sound discretion of the trial court as to whether the purchase price paid by the owner of the condemned property should be admitted into evidence." *West Virginia Dept. of Highways v. Woods*, 180 W.Va. 93, 96, 375 S.E.2d 564, 567 (1988) (citation omitted). However, in an eminent domain proceeding to take private property for public use, the trial court's sound discretion is not unbridled, and the decision as to whether the purchase price paid by the owner of the condemned property should be admitted into evidence is to be guided by several factors or conditions. *See Mountain Inc., supra.*

The general rule is that evidence of the price paid for property which is the subject of appropriation proceedings is admissible, if the following conditions are satisfied:

(a) The sale must be bona fide;

(b) The sale must be voluntary, not forced;

(c) The sale must have occurred relevantly in point of time; and

(d) The sale must cover substantially the same property which is the subject of the appropriation action.

*Mountain Inc.*, 167 W.Va. 202, 205, 279 S.E.2d 192, 194 (1981), *Quoting 5 Nichols on Eminent Domain*, § 21.2, at 21–4–21–8 (3rd rev.ed. 1979) (footnote omitted).

In the instant case, the admissibility of the purchase price is determined by factors (c) and (d). There is no contention that the sale in which the appellant purchased the property was not bona fide. Also, even though the appellant claims that the sale was not voluntary but forced because "the seller was anxious to sell for financial reasons," we are unable to determine from this vague assertion whether the seller "freely exercis[ed] prudence and intelligent judgment as to its value, and [was] unaffected by compulsion of any kind." Syllabus Point 2, in part, *Guyandotte Valley Ry. Co. v. Buskirk*, 57 W.Va. 417, 50 S.E. 521 (1905).

Concerning whether the sale occurred relevantly in point of time, we determined in *Guyandotte Valley Ry. Co., supra*, that purchase price evidence was properly considered by the jury where the property was purchased about three months prior to the commencement of the eminent domain action. In *Mountain Inc., supra*, we found that four and a half years between the time the appellant purchased the property and the time the property was taken for public use did not render the purchase price evidence "inadmissible *per se.*" 167 W.Va. at 206, 279 S.E.2d at 195. Finally, in *West Virginia Dept. of Highways v. Woods*, 180 W.Va. 93, 96, fn. 5, 375 S.E.2d 564, 567, fn. 5 (1988), we concluded that the purchase of the subject property three years earlier "was not so remote in time from the condemnation proceedings as to render evidence of the purchase price inadmissible for that reason."

---

**5.** The DOH also argues that the appellant waived the alleged jury instruction errors by failing to make a sufficiently specific objection at trial. Because we address these issues in order to give direction to the circuit court on remand, we do not find it necessary to consider the merits of this argument.

In the present case, the appellant purchased the subject property in June 1986 and the take occurred in March 1996, approximately nine years and nine months later. Economic conditions in a given area may change significantly in a period of close to ten years. This appears to be the case here. There was testimony at trial of a "remarkable and dramatic" change in the desirability of land in the area where the subject property is located which, of course, caused a substantial increase in property value. One expert witness testified that recent economic developments made the purchase price paid by the appellant irrelevant to a determination of the property's fair market value. Accordingly, we find that the price paid by the appellant for the condemned land was too remote in time so that it is not probative of the fair market value of the property at the time of the take.

Further, we find that the fourth condition listed above is not met here. In *Mountain Inc.*, we concluded that purchase price evidence was not admissible when there had been a substantial change in the physical characteristics of the property due to the leveling of its slope. In the instant case, there was not a substantial change in the physical characteristics of the property. We also stated in *Mountain Inc.*, however, that the fourth condition for admissibility can be construed to cover those instances in which the amount of property taken is substantially different from the amount of property originally purchased. This is the case here. The appellant originally purchased 20 acres of land. The portion of this land taken by the DOH amounts to only 3.665 acres. Further, most of the twenty acres purchased by the appellant consists of hilly property whereas the portion taken is, to a large degree, level. This makes it difficult for a jury to apportion from the purchase price paid for the entire tract of land the value of the actual property taken. Therefore, we believe that because the sale in which the appellant purchased the property does not cover substantially the same property which is the subject of the eminent domain action, evidence of the purchase price is inadmissible.

We therefore find that in this eminent domain proceeding to take private property for public use, the purchase price paid by the owner for the subject property is not admissible because there was a period of approximately nine years and nine months between the time the landowner purchased the subject property and the time a portion of the property was taken for public use. Also, the amount of property taken, 3.665 acres, is substantially different from the amount of property originally purchased which was twenty acres.

### III.

### CONCLUSION

In light of the above, we find that the circuit court abused its discretion in excluding the testimony of David Heater as to the value of the appellant's property and in admitting evidence of the purchase price paid by the appellant for the subject property for the purpose of determining its fair market value at the time of the take. Accordingly, we reverse and remand for proceedings consistent with this opinion.

Reversed and remanded.