# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Trans-Allegheny Interstate Line Company,**
**Plaintiff Below, Petitioner**

**vs) No. 13-0253** (Hardy County 09-C-70)

**Lyle W. Daugherty and Brenda P. Daugherty,**
**Defendants Below, Respondents**

**FILED**

November 22, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Trans-Allegheny Interstate Line Company ("TAILC"), by counsel John Philip Melick, Elizabeth A. Amandus, and Richard Grady Ford, appeals the February 7, 2013, order of the Circuit Court of Hardy County denying its motion for new trial following a jury trial. Respondents Lyle W. Daugherty and Brenda P. Daugherty, by counsel Robert L. Bays and Charles F. Printz Jr., filed a response, asserting cross-assignments of error stemming from the circuit court's denial of their motion for new trial. Petitioner also submitted a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

In 2008, the Public Service Commission of West Virginia ("PSC") certified Petitioner TAILC's construction of the Trans-Allegheny Interstate Line, a 500 kV electric transmission line from southwest Pennsylvania, across northeast West Virginia, and into Virginia ("the line"). An easement was condemned for a portion of the certified route across two parcels of respondents' land in Hardy County when it was unable to negotiate an agreement with respondents. The line was then constructed and energized in May of 2011, and the only issue remaining for the circuit court was to decide the appropriate amount of compensation due to respondents. The matter went to trial in October of 2012.

Respondents' land was used largely for raising chickens for Pilgrim's Pride, and they were concerned that the line would interfere with those activities. Petitioner contends that respondents failed to produce any competent evidence of such interference and that the circuit court repeatedly ruled that such unproven assertions could not be made at trial. During the trial, Mike Ellington, a long-time employee of Pilgrim's Pride, testified as to the impact of the line on respondents' property as it relates to respondents' contract with Pilgrim's Pride.

At the conclusion of the trial, the jury awarded compensation for the decrease in the fair market value of respondents' property in the amount of $54,000 and for residual damages in the amount of $321,000. The circuit court entered its "Order of Judgment on Jury Verdict" on November 1, 2012, setting forth those awards and ordering petitioner to pay $375,000 to respondents, plus interest and court costs. Both parties then filed motions for a new trial, and by order entered February 7, 2013, the circuit court denied those motions. TAILC appeals the denial of its motion for new trial, and respondents submit cross-assignments of error appealing the denial of their motion for new trial.

> This Court reviews the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Burke-Parsons-Bowlby Corp. v. Rice*, 230 W.Va. 105, 736 S.E.2d 338 (2012). Further:

> "'the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, [and] the trial court's ruling will be reversed on appeal [only] when it is clear that the trial court has acted under some misapprehension of the law or the evidence.' Syl. pt. 4, in part, *Sanders v. Georgia-Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976)." Syllabus point 2, *Estep v. Mike Ferrell Ford Lincoln-Mercury, Inc.*, 223 W.Va. 209, 672 S.E.2d 345 (2008).

Syl. Pt. 2, *Peters v. Rivers Edge Min., Inc.*, 224 W.Va. 160, 680 S.E.2d 791 (2009).

On appeal, petitioner asserts three assignments of error and respondents assert four cross-assignments of error.

## I.    Petitioner's assignments of error

Petitioner asserts three assignments of error, which have a great deal of overlap. First, petitioner asserts that the evidence "of Mr. Ellington" was irrelevant under the circuit court's pretrial orders and was unfairly prejudicial. As part of that alleged error, petitioner contends that the circuit court erred by overruling petitioner's repeated objections to Mr. Ellington's testimony. In its second assignment of error, petitioner contends that the circuit court compounded its erroneous rulings related to Mr. Ellington's testimony by admitting Mr. Ellington's unqualified, speculative memorandum as documentary evidence. Finally, petitioner contends that the circuit court erred in denying petitioner's motion for a new trial, based on the erroneous rulings on the evidence related to Mr. Ellington and the unfairly prejudicial, surprise testimony of Respondent Mr. Daugherty, each orchestrated by counsel for respondents and exploited throughout the trial, including in closing argument.

During Mr. Ellington's testimony, the circuit court allowed the admission of an undated memorandum authored by Mr. Ellington. That memorandum states, in relevant part, that "[i]f the power line to be constructed through [respondents'] property . . . follows the path that

[respondents] showed [him that day], then any future expansion of their poultry operation would be prohibited by the power line right of way. Poor performance due to any electrical or controller issues could result in the termination of [the contract between Pilgrim's Pride and respondents.]" Petitioner claims that counsel for respondents consistently represented, both before and at the outset of trial, that Mr. Ellington would testify that respondents could not expand their chicken farming operations due to the installation of the line. On the first day of trial, the circuit court ruled that Mr. Ellington could testify, despite petitioner's contention that the testimony would be a waste of time, would potentially confuse the jury, and would unfairly prejudice petitioner by inviting an additional award reflecting a loss of a particular business that had not been evacuated. Petitioner argues that Mr. Ellington was not an expert qualified to address the impact of the line. Petitioner contends that the memorandum drafted by Mr. Ellington was inadmissible and was not material evidence in its own right. Petitioner, therefore, contends that it was materially prejudiced by the erroneous introduction of this unqualified, speculative memorandum.

Petitioner also asserts that counsel for respondents elicited inadmissible testimony about electrical problems in the existing poultry houses, in violation of the pre-trial rulings of the circuit court. Petitioner objected to such testimony, and the circuit court sustained that objection. During cross-examination, petitioner asked Mr. Daugherty to admit that his chicken barns had remained in full and successful operation since energization, just as he had in pretrial discovery responses verified under oath. He also testified that while chickens are in the four buildings, there are a lot of problems, so he was not raising the chickens in the same way he raised them previously. When asked why those problems had not been disclosed during discovery, Mr. Daugherty testified that for the preceding four or five years every time

> I call something in, "they'll get back to me." They never do. . . . I have not been paid one red cent for damages, for land, or nothing on this property and how long have you all used it? . . . If I can't use those poultry houses, I guarantee [$500,000 to $600,000 is] probably all I can get [for the property if sold].

The circuit court called counsel to the bench when it determined that Mr. Daugherty was getting into issues related to electromagnetic damages, which were specifically excluded by the circuit court prior to trial, and put a stop to the testimony. Mr. Daugherty admitted that there were chickens in the four poultry buildings and that there had been chickens there since the time the line was energized.

Mr. Daugherty testified that if someone wanted to purchase his farm, the buyer would first have to go to the poultry company and prove to them that they could grow chickens. The company would go to the property to inspect the buildings before allowing the buyers to put chickens in. He further testified that it was unlikely that anyone would be interested in purchasing the land unless they could get a contract to keep operating the barns that are there. Petitioner complains about an answer volunteered by Mr. Daugherty regarding whether he had electrical problems on his property, as the circuit court previously ruled that Mr. Daugherty was not allowed to testify to either electromagnetic field issues or electrical problems with respect to the operation of his farm. In responses to interrogatories, respondents recited instances in which there was damage to the electrical system in his home and in the chicken barns. He also testified as to the effects of the construction of the project on his property, loss of trees, damage to the

3

fences, and the shocking effect created in his pasture field under the lines, particularly the impact on his horse business. He also testified regarding the potential harm to the poultry operation from helicopters used to trim the right-of-way.

During Mr. Ellington's testimony, counsel for respondents inquired about the memorandum Mr. Ellington kept in his file as part of his business records and moved that the document be admitted. When asked if it had any objection to the admission of that document, petitioner objected, stating that the memorandum was contrary to the circuit court's pre-trial ruling. Respondents disagreed, and the circuit court stated that the last sentence of the memorandum was contrary to its pre-trial ruling. Counsel for respondents argued that the last sentence did not really impact what was discussed outside of the jury's presence. The circuit court then overruled the objection, stating that it would allow the admission of the memorandum because it goes to the question of what respondents could do under the power line. The circuit court also noted that petitioner could address the memorandum on cross-examination. Mr. Ellington testified that "corporate" reviewed the memorandum before it was sent to an individual at Allegheny Power.

> The West Virginia Rules of Evidence and the West Virginia Rules of Civil Procedure allocate significant discretion to the trial court in making evidentiary and procedural rulings. . . . Absent a few exceptions, this Court will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard.

Syl. Pt. 1, *McDougal v. McCammon,* 193 W.Va. 229, 455 S.E.2d 788 (1995). Further, "'[w]hen a case involving conflicting testimony and circumstances has been fairly tried, under proper instructions, the verdict of the jury will not be set aside unless plainly contrary to the weight of the evidence or without sufficient evidence to support it.' Syl. Pt. 4, *Laslo v. Griffith*, 143 W.Va. 469, 102 S.E.2d 894 (1958)." Syl. Pt. 1, *Wilkinson v. Bowser*, 199 W.Va. 92, 483 S.E.2d 92 (1996).

Mr. Ellington was not designated as an expert witness in respondents' pre-trial disclosures, and he was not qualified as an expert during trial. During the hearing on the respective motions for new trial, the circuit court stated that it had listened to Mr. Ellington's testimony and did not believe, based on the cross-examination, that the landowner got much helpful testimony from him. The circuit court also pointed to Mr. Ellington's testimony that the information in the memorandum was just a basic statement as to termination of any poultry grower, rather than specific to respondents. During the trial, Mr. Ellington's testimony was relatively short. On direct examination, he testified as to his role with Pilgrim's Pride, his knowledge of respondents' property, the memorandum at issue, and the potential for the expansion of the poultry houses both before and after the installation and energization of the line. During cross-examination, petitioner did not question Mr. Ellington directly about the memorandum, instead focusing on issues related to the expansion of respondents' poultry growing operation. The circuit court and the jury heard all of Mr. Ellington's testimony, and the jury considered both the testimony and the memorandum. The jury determined Mr. Ellington's credibility and the weight to be afforded his testimony. Based on the record before this Court, we find that the circuit court did not abuse its discretion in permitting Mr. Ellington to testify in this

limited manner or in finding that the memorandum was admissible. In addition, we find that petitioner has failed to meet the onerous burden necessary to set aside a jury's verdict relative to Mr. Ellington's testimony.

Similarly, we find that the circuit court did not abuse its discretion in permitting Mr. Daugherty to testify regarding both the use of respondents' property and the problems experienced on the property since the energization of the line. During direct examination, Mr. Daugherty testified as to his personal experience being shocked by an electrical charge and problems in the poultry houses. When he testified that motors in the poultry houses had run backward since the line was energized, petitioner's objection on that point was sustained. Counsel for respondents immediately changed to a different line of questioning. Our review of the record does not reveal conduct on the part of respondents' counsel that ran afoul of the circuit court's pre-trial ruling related to the electromagnetic issues in the poultry houses. Therefore, we find that the circuit court did not abuse its discretion in denying petitioner's motion for new trial.

## II. Respondents' cross-assignments of error

Respondents assert four cross-assignments of error as part of their response to petitioner's appeal; three of those assignments of error relate to the circuit court's exclusion of three expert witnesses. Darrell Rolston, CCIM, SRPA, GAA, was substituted as respondents' expert appraiser prior to trial. On August 27, 2012, petitioner filed a motion in limine concerning the examination of Mr. Rolston, requesting that the circuit court allow petitioner to impeach Mr. Rolston as to both his reliance on respondents' former expert appraiser's work and lack of credibility. Attached to that motion was an order from the West Virginia Real Estate Appraiser Licensing and Certification Board suspending the previous appraiser's real estate appraiser license after he pled to a felony charge of submitting a false appraisal report to a federally insured lending institution. Respondents responded to that motion, and the circuit court found that Mr. Rolston could not be questioned about the criminal proceedings or disciplinary proceedings regarding the prior appraiser. However, Mr. Rolston could be examined regarding the prior appraiser's work and Mr. Rolston's use of or reliance upon that work. Out of the presence of the jury on the first day of the trial, counsel for respondents argued that Mr. Rolston should be permitted to testify as to the diminution in value of the horse barns on the property and the cost to cure the shocking issue related to the horses. The circuit court concluded that Mr. Rolston could not testify as to the value of the horse business because horses had been seen under the lines without any shock issues and because there is a second power line that did not interfere with the horse business.

The next expert's testimony at issue is that of Johnny B. Dagenhart. In respondents' original witness disclosure, respondents stated simply that Mr. Dagenhart was an expert witness who would testify with respect to his report regarding respondents' property. On September 6 and 7, 2012, the circuit court held a hearing that related largely to the admissibility of Mr. Dagenhart's proposed testimony. Respondents stated that based on the circuit court's prior ruling regarding the inadmissibility of the evidence on the electromagnetic field, they intended to offer Mr. Dagenhart's testimony to confirm that there is a stray voltage issue in the area and his plan to cure. However, the circuit court did not rule as to Mr. Dagenhart's testimony at that time. On the first day of the trial, October 1, 2012, counsel for respondents indicated that during a previous telephonic hearing the circuit court had ruled that Mr. Dagenhart would not be

permitted to testify. In response, the circuit court indicated that the main purpose that day was to make a record for respondents' benefit, so the parties were permitted to present argument on that issue. The circuit court then granted petitioner's motion to preclude the testimony of Mr. Dagenhart as to the consequences of the shocking. This holding was based, in part, on the circuit court's belief that Mr. Dagenhart had not opined whether it was reasonable or necessary to have the proposed shield respondents contend is necessary to cure the shocking problem.

"'The admissibility of testimony by an expert witness is a matter within the sound discretion of the trial court, and the trial court's decision will not be reversed unless it is clearly wrong.' Syllabus Point 6, *Helmick v. Potomac Edison Co.*, 185 W.Va. 269, 406 S.E.2d 700 (1991), *cert. denied*, 502 U.S. 908 (1991)." Syl. Pt. 1, *W.Va. Div. of Highways v. Butler*, 205 W.Va. 146, 516 S.E.2d 769 (1999). Rule 702 of the West Virginia Rules of Evidence states that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." That rule further requires that an expert's opinion be based on scientifically or technically valid and properly applied methodology. *Id.*

> In analyzing the admissibility of expert testimony under Rule 702 of the West Virginia Rules of Evidence, the trial court's initial inquiry must consider whether the testimony is based on an assertion or inference derived from the scientific methodology. Moreover, the testimony must be relevant to a fact at issue. Further assessment should then be made in regard to the expert testimony's reliability by considering its underlying scientific methodology and reasoning. This includes an assessment of (a) whether the scientific theory and its conclusion can be and have been tested; (b) whether the scientific theory has been subjected to peer review and publication; (c) whether the scientific theory's actual or potential rate of error is known; and (d) whether the scientific theory is generally accepted within the scientific community.

Syl. Pt. 2, *Wilt v. Buracker,* 191 W.Va. 39, 443 S.E.2d 196 (1993). Based upon our review of the record and the reasoning set forth by the circuit court, we find that the circuit court did not abuse its discretion in excluding or limiting the areas of testimony of Mr. Rolston and Mr. Dagenhart.

Respondents' final expert issue is their contention that the circuit court erred in precluding the testimony of Gerald Smith, a licensed electrical contractor. According to respondents, Mr. Smith is the owner of Broadway Electric, and his company has worked in the electrical business for over thirty years. If he had been permitted to testify, he would have testified about the cost to cure the shocking problem using the design criteria for the shield developed by Mr. Dagenhart. However, respondents fail to cite the portion of the record evidencing the circuit court's exclusion of Mr. Smith or respondents' objection to such ruling. Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that the argument section of the briefs contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The portion of respondent's argument related to the exclusion of Mr. Smith is devoid of references to the record, and the appendix record is 1,762 pages. Due to respondent's

failure to point out to this Court, with the required specificity, the circuit court's decision to exclude Mr. Smith and respondents' objection to that decision, we decline to address this cross-assignment of error.

Respondents' final assignment of error is that the circuit court erred in limiting the testimony of respondents. In the "Proffer of Defendants, Lyle W. Daugherty and Brenda P. Daugherty," respondents stated that Mr. Daugherty would testify that the Daugherty family had been on the subject property for six generations, as that information would be considered pertinent as to the use of the property over a period of time and would be the type of information that a prospective purchaser may wish to know with respect to any type of proposed real estate transaction. Mr. Daugherty also intended to testify about his intention to expand the use of his property by installing additional chicken barns. As set forth above, a circuit court's ruling regarding the admissibility of evidence is subject to an abuse of discretion standard. *Gentry v. Mangum*, 195 W.Va. 512, 517, 466 S.E.2d 171, 176 (1995). Prior to trial, the circuit court found that no evidence or argument would be presented on behalf of respondents concerning their emotional attachment to or other particular, personal valuation of their property or their resentment about petitioner or the condemnation action. Based on the record before this Court and the facts of this case, we find that the circuit court did not abuse its discretion in placing these reasonable limitations upon respondents' testimony.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED: November 22, 2013**

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

7