Willie Mae **THORNTON, as personal representative of the Estate of Paul L. Thornton, deceased, Plaintiff,**

v.

**CATERPILLAR, INC., Balderson, Inc., and Blanchard Investments, Inc., d/b/a Blanchard Machinery Company, Defendants.**

**Civil Action No. 6:95–0314–3.**

United States District Court, D. South Carolina, Greenville Division.

Jan. 21, 1997.

---

**576**

Danny E. Allen, Spartanburg, SC, for Willie Mae Thornton, as personal representative of the Estate of Paul L. Thornton, deceased.

William Francis Marion, Jr., Haynsworth, Marion, McKay and Guerard, Greenville, SC, for Caterpillar Inc., Balderson Inc.

W. Howard Boyd, Jr., Luanne Lambert Runge, Gibbes, Gallivan, White & Boyd, P.A., Greenville, SC, for Blanchard Investments Inc.

*ORDER*

GEORGE ROSS ANDERSON, Jr., District Judge.

This matter is before the Court on Defendants' motion to exclude or limit the testimony of an expert for the plaintiff, Dr. Melvin K. Richardson, Ph.D., an experienced mechanical engineer. While on the faculty at Clemson University, Dr. Richardson taught in the areas of machine design, kinematics and dynamics of machines, elasticity and strength of materials, vibrations, statics and dynamics of mechanical systems and manufacturing materials and processes. He has served as a private consultant in machine design and analysis, structure failure analysis and product design. The defendants contend that the plaintiff's expert has stated opinions relating to design that he is not qualified to render under the requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). This Court declines to apply the *Daubert* test to this area of expertise and denies the motion.

Federal Rule of Evidence 702[1] explicitly recognizes three separate and distinct types of experts: (1) scientific, (2) technical, and (3) other specialized knowledge. *Dau-*

---

**1.** Fed.R.Evid. 702. Testimony by Experts.
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

*bert* is not applicable, nor was it intended to apply, to experts testifying in the field of technical or other specialized knowledge. Engineers can be classified as possessing either technical or other specialized knowledge but by definition they can never be legitimately classified as scientists.

■ In interpreting the *Daubert* factors, confusion is rampant. Part of the confusion stems from a common misconception that the *Daubert* decision applies to all three categories of expert testimony, rather than expert scientific testimony only. *Daubert* involved a novel scientific theory that the drug Bendectin when taken by expectant mothers caused birth defects in their babies. Based on the facts before the Court in *Daubert,* I conclude that *Daubert* should apply only to novel scientific testimony. To hold otherwise would expand the scope of the Court's holding far beyond the uncontroverted scientific facts.

In *Daubert* the Supreme Court, citing the generally liberal thrust of the Rules of Evidence, sought to expand the admissibility of scientific testimony and hoped to reduce the disparity in evidentiary rulings while promoting predictability in the law while accommodating new ideas and technologies. The *Daubert* decision abolished the restrictive *Frye*[2] test, and set up trial judges as gatekeepers on admissibility of novel scientific evidence.

In attempting to offer guidance to federal judges, the Supreme Court set forth four non-exclusive factors for assessing the validity of scientific evidence:

1.  Whether the theory or technique has been tested.

2.  Whether the theory or technique has been published or subjected to peer review.

3.  The rate of error and the existence or maintenance of standards, and

4.  Whether the theory or technique has been generally accepted.

There is no question that the four principles enunciated by the Court are simple to state and without exception all judges restate these principles correctly. However, a lack of uniformity in application occurs when an individual judge applies his own personal conception of the evidence to these four factors or when the trial judge attempts to apply the *Daubert* factors to every category of expert.

The *Daubert* test cannot, and was not intended to, apply to expert testimony that is technical in nature, or to expert testimony that covers specialized knowledge. Footnote 8 of the *Daubert* decision clearly states that:

> "Rule 702 *also* applies to technical and other specialized knowledge. Our discussion is limited to the scientific context because that is the nature of the expertise offered here." *Daubert* at 588, 113 S.Ct. at 2794.

Random House Dictionary defines "technical" as anything "pertaining to or connected with the mechanical or industrial arts and the applied sciences."[3] Technical knowledge is the knowledge of these mechanical and industrial arts and the applied sciences.

Random House Dictionary defines one who specializes as one who pursues "some special line of study, work, etc."[4] Specialized knowledge refers to any knowledge focused on a particular area of study, profession, or experience.

Scientific knowledge differs from technical and specialized knowledge in that it is a validation. Scientific knowledge is the process of formulating a hypothesis and then engaging in experimentation or observation to verify or falsify that hypothesis. It is this knowledge garnered from experimentation and observation that was offered as evidence in *Daubert.*[5]

The rules set forth in *Daubert* simply are not applicable to "technical or other specialized knowledge." And the Court so stated.

---

2.  *Frye v. U.S.,* 54 App.D.C. 46, 293 F. 1013 (App.D.C.1923).

3.  Random House Dictionary of the English Language 1950 (2d ed. 1987).

4.  Random House Dictionary of the English Language 1831 (2d ed. 1987).

5.  In *Daubert, evidence was* offered through epidemiological studies, in vitro and in vivo animal studies, and pharmacological chemical studies.

*Daubert* at 588, 113 S.Ct. at 2794. Fed. R.Evid. 702 has not been repealed or modified or changed in any way when it comes to admitting "technical" or other "specialized knowledge". These terms are of equal importance and on an equal footing with the phrase "scientific testimony." This is a basic rule of statutory construction and the Rules of Evidence are unquestionably federal statutes enacted by Congress.[6] Fed.R.Evid. 702 has well served the administration of justice since its inception, and will continue to do so when properly applied. Misapplication will have the opposite effect.

This Court refuses to interpret the gatekeeper role so as to interject itself in the fact finding process under the guise of determining not only the admissibility, but relevance and reliability of the testimony. Admissibility and reliability are two totally distinct and different concepts. Admissibility is for the judge. Reliability is for the jury. A judge that usurps the role of the jury must, of necessity, become expert in every field of knowledge in order to properly perform this role. It is debatable whether or not judges possess sufficient expansive knowledge to effectively perform this task.

■ Fed.R.Evid. 702 is still viable and the principles enunciated in *Daubert* should be narrowly limited to controversial and novel scientific evidence. *Daubert* has no other application for use in the expert field of engineering, as well as the fields of general medical issues, real estate or other types of technical subjects or those requiring specialized knowledge. *Daubert* and Fed.R.Evid. 702 should be strictly confined to the novel scientific facts that were before the Court. It was made clear in footnote 8 that the test did not apply to "technical or other specialized knowledge." Auto mechanics, engineers, accountants, attorneys, DEA agents, IRS agents, real estate appraisers, and the like who have technical qualifications cannot logically come within the ambit of *Daubert*. Nor do persons with "other specialized knowledge."

The Fourth Circuit's opinion in *Benedi v. McNeil–P.P.C., Inc.* 66 F.3d 1378 (4th Cir. 1995), citing *Daubert*, stated that in "determining whether to admit expert scientific testimony, the district court must determine whether the expert's testimony is based on scientific knowledge that will assist the trier of fact in understanding or determining a fact in issue." *Benedi* at p. 1383.

In *Iacobelli Const., Inc. v. County of Monroe*, 32 F.3d 19 (2d Cir.1994), the Second Circuit found that the District Court erred in applying *Daubert* to an expert on construction site conditions, contract documents and project results because such testimony is not scientific. In *Compton v. Subaru of America, Inc.*, 82 F.3d 1513 (10th Cir.), the Tenth Circuit described *Daubert* as setting out a new framework for determining the admissibility of expert scientific testimony. The court went on to state that "we have continued to apply essentially the same Rule 702 analysis except in cases involving unique, untested, or controversial methodologies or techniques." *Compton* at p. 1519. Certiorari was denied in another Tenth Circuit decision that used the conventional Rule 702 approach to permit expert testimony by a police officer with specialized knowledge of drug trafficking while applying the *Daubert* factors to the expert testimony of a forensic chemist to determine the reliability and relevance of his methodology. *United States v. Muldrow*, 19 F.3d 1332, 1337–1338 (10th Cir.), *cert. denied.*

■ To apply *Daubert* factors to technical and specialized knowledge experts clearly misses the mark. Plaintiff's expert, Dr. Melvin K. Richardson, Ph.D. is a mechanical engineer who has given opinions with regard to design and lack of adequate warning. This type of expertise is clearly not within the narrowly limited area of unique, untested and novel scientific evidence as enunciated in *Daubert*.

■ Defendants object that Dr. Richardson has never designed or developed a cou-

---

**6.** Although initially proposed by the Supreme Court, the Federal Rules of Evidence were enacted into law by Congress, Act of Jan. 2, 1975, Pub.L. 93–595, 88 Stat.1926 (1975), and they "govern proceedings in the courts of United States." Fed.R.Evid. 101; *see Daubert* at 585–87, 113 S.Ct. at 2792–94. *See also Salas by Salas v. Wang*, 846 F.2d 897, 904 (3d Cir.1988).

pling system for the purpose of attaching implements to a bucket loader, nor has he ever designed an active warning device. The *Restatement of Torts* does not require an expert to actually construct an alternate design as a prerequisite to his testimony. According to *Restatement (Third) of Torts: Prod. Liab.* § 2(e) (T.D. No. 2, 1995):

> While plaintiff must prove that a reasonable alternative design would have reduced the foreseeable risks of harm, § 2(b) does not require the plaintiff actually to produce a prototype in order to make out a prima facie case. For example, qualified expert testimony on the issue suffices if it reasonably supports the conclusion that a reasonable alternative design could have been adopted at the time of sale.

THEREFORE, IT IS ORDERED that Defendants' motion to exclude or limit the testimony of Dr. Melvin K. Richardson, Ph.D. is denied.

IT IS SO ORDERED.