545 S.E.2d 294

**Joyce A. WATSON, Administratrix of the Estate of Carl Watson, Deceased, and Joyce Watson, in Her Own Right, Plaintiff Below, Appellant,**

v.

**INCO ALLOYS INTERNATIONAL, INC., Nacco Industries, Inc., and Nacco Materials Handling Group, Inc., Defendants Below, Appellees.**

No. 28469.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 6, 2001.

Decided March 9, 2001.

Brian Alan Prim, Goldberg, Persky, Jennings, White & Hostler, Huntington, David B. Rodes, Goldberg, Persky, Jennings & White, P.C., Pittsburgh, Pennsylvania, Attorneys for the Appellant.

W. Henry Jernigan, Jr., Gretchen M. Callas, Jackson & Kelly PLLC, Charleston, West Virginia, Attorneys for Appellee Nacco Materials Handling Group, Inc.

DAVIS, Justice:

In this products liability action, Mrs. Joyce A. Watson challenges orders of the Circuit Court of Cabell County finding her expert witness, a professional engineer, was not admissible, and granting summary judgment in favor of the defendant based upon the absence of admissible expert testimony. We conclude that the circuit court abused its discretion by relying, in part, on its application of the *Wilt/Daubert* standard for determining the admissibility of expert scientific testimony to exclude the expert's testimony, as that testimony was founded on technical and not scientific knowledge. In addition, the circuit court abused its discretion in concluding that the engineer was not qualified to offer an opinion as to the causation and enhancement of injuries sustained by the plaintiff's decedent. Finally, because we conclude the expert's testimony is admissible, we find the circuit court erred in granting summary judgment and we remand this case for additional proceedings.

## I.

### FACTUAL AND PROCEDURAL HISTORY

On April 29, 1996, plaintiff's decedent, Carl Watson, was operating a stand-up lifttruck [1] for his employer, INCO Alloys International, Inc. (hereinafter "INCO"). Mr. Watson was using the lifttruck to load large coils of wire onto a flat-bed tractor trailer.[2] At some point during this operation, the lifttruck backed off the side of the tractor trailer, fell approximately five feet, and landed on a concrete floor. Mr. Watson was crushed in the accident, and immediately died.[3] His wife, Joyce A. Watson (hereinafter "Mrs. Watson"), plaintiff below and appellant herein, subsequently filed suit in her capacity as administratrix of the estate of her husband, and in her own right, against several defendants including Nacco Materials Handling Group, Inc. (hereinafter "Nacco"),[4] the manufacturer of the lifttruck.[5] Mrs. Watson's claims against Nacco are that the lifttruck was defectively designed in that was not equipped with side doors, and that it did not provide appropriate warnings of what an operator should do in case of a fall. In support of her contentions, Mrs. Watson intended to offer the expert testimony of Mr. John B. Sevart, a licensed professional engineer. Nacco opposed Mr. Sevart's testimony and filed a motion in limine to have it excluded. By order entered January 28, 2000, the Circuit Court of Cabell County granted Nacco's motion on two grounds. First, the circuit court concluded that the testimony offered by Mr. Sevart on the causation and enhancement of Mr. Watson's injuries was outside his expertise and not admissible under Rule 702 of the West Virginia Rules of Evidence. The circuit court explained:

1. The particular vehicle used by Mr. Watson is similar to a stand-up forklift, but in place of the forks it has a pole for lifting coils of wire.

2. It is apparently undisputed that Mr. Watson had nearly thirty years of experience operating lifttrucks, including fourteen years operating the particular lifttruck that was involved in his fatal accident.

3. There were no witnesses to the accident, so specific details of how it occurred are unavailable. Following the accident, the lifttruck was

In the case at bar, the plaintiff offers witness Sevart's testimony in the areas of causation of injuries and the enhancement of injuries. This court believes that witness Sevart's testimony in these areas is outside his expertise. Therefore, because the court is of the opinion that medical causation and injury enhancement testimony requires testimony of a medical expert, the court will exclude witness Sevart's testimony in these areas.

In addition, the circuit court concluded that Mr. Sevart's testimony, as an expert engineer, on the issues of design defects to the lifttruck and the lack of adequate warnings was scientific, and therefore must fulfill the standards set forth in *Gentry v. Mangum*, 195 W.Va. 512, 466 S.E.2d 171 (1995). In this regard, the circuit court further stated that it had reviewed Mr. Sevart's report, his deposition testimony, and documents filed by Mrs. Watson describing the intended purpose of Mr. Sevart's testimony. The court then explained that it

[did] not find any basis to show that any test was performed to show that the plaintiff exited the fork in the manner claimed by witness Sevart. Furthermore, the court [did] not find any testimony to show that any tests whatsoever were performed to allow this court to determine whether witness Sevart's opinions reflect the use of the scientific method at all.

Therefore, any opinion on side doors and causative effect would have no scientific basis and would constitute witness Sevart's mere personal opinion. Therefore, this court must exclude witness Sevart's testimony regarding design defects.

Based upon the circuit court's exclusion of Mr. Sevart's testimony, Nacco filed a motion

fully tested and no mechanical malfunctions were discovered. It is still in use at INCO. In addition, it should be noted that Nacco appears to dispute that the crushing of Mr. Watson was necessarily the cause of his death.

4. Other defendant's named in Mrs. Watson's law suit are not involved in the instant appeal.

5. The lifttruck was actually manufactured by Hyster Company in 1982. Nacco is Hyster's successor and has assumed liability for Hyster.

for summary judgment alleging that, without the testimony of an expert witness, Mrs. Watson could not sustain her burden under *Morningstar v. Black & Decker Mfg. Co.*, 162 W.Va. 857, 253 S.E.2d 666 (1979), to show that the decedent's injuries were enhanced as a proximate result of a defect in the lifttruck he was operating at the time of the accident. The circuit court agreed, and by order entered on March 8, 2000, granted summary judgment in favor of Nacco. It is from the January 28, 2000, and March 8, 2000, orders of the Circuit Court of Cabell County that Mrs. Watson now appeals.

## II.

## STANDARD OF REVIEW

■■■■■ This case is before us from an order of the circuit court granting summary judgment in favor of Nacco. Our review of such an order is *de novo*. Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo*."). In considering the propriety of summary judgment in this case, we apply the same standard that is applied at the circuit court level, that is "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963).

■■■ The circuit court granted summary judgment in favor of Nacco based upon the court's exclusion of Mrs. Watson's expert witness, Mr. Sevart. The circuit court found that, without the admissible testimony of an expert witness, Mrs. Watson was unable to meet her burden of establishing the elements required to proceed with her products liability action. *See Morningstar v. Black & Decker Mfg. Co.*, 162 W.Va. 857, 253 S.E.2d 666. In the absence of such testimony, the circuit court reasoned, there was no triable issue of fact. Consequently, the focus of Mrs. Watson's appeal is the circuit court's decision to exclude Mr. Sevart's testimony. When considering the propriety of a circuit court's

decision whether to admit the testimony of an expert witness, we will reverse only for a clear abuse of discretion:

"The admissibility of testimony by an expert witness is a matter within the sound discretion of the trial court, and the trial court's decision will not be reversed unless it is clearly wrong." Syllabus Point 6, *Helmick v. Potomac Edison Co.*, 185 W.Va. 269, 406 S.E.2d 700 (1991), *cert. denied*, 502 U.S. 908, 112 S.Ct. 301, 116 L.Ed.2d 244 (1991).

Syl. pt. 1, *West Virginia Div. of Highways v. Butler*, 205 W.Va. 146, 516 S.E.2d 769 (1999). *See also* Syl. pt. 3, *Wilt v. Buracker*, 191 W.Va. 39, 443 S.E.2d 196 (1993) (" ' " 'Whether a witness is qualified to state an opinion is a matter which rests within the discretion of the trial court and its ruling on that point will not ordinarily be disturbed unless it clearly appears that its discretion has been abused.' Point 5, syllabus, *Overton v. Fields*, 145 W.Va. 797 [117 S.E.2d 598 (1960) ]." Syllabus Point 4, *Hall v. Nello Teer Co.*, 157 W.Va. 582, 203 S.E.2d 145 (1974).' Syllabus Point 12, *Board of Education v. Zando, Martin & Milstead, [Inc.,]* 182 W.Va. 597, 390 S.E.2d 796 (1990)."); Syl. pt. 2, *Morris v. Boppana*, 182 W.Va. 248, 387 S.E.2d 302 (1989) (" 'Under W. Va. R. Evid. 702, a trial judge has broad discretion to decide whether expert testimony should be admitted, and where the evidence is unnecessary, cumulative, confusing or misleading the trial judge may properly refuse to admit it.' Syllabus point 4, *Rozas v. Rozas*, 176 W.Va. 235, 342 S.E.2d 201 (1986).").

With due consideration for the above quoted standards, we will consider the issues raised by the parties.

## III.

## DISCUSSION

*A. Applicability of Wilt v. Buracker to Expert Witness Testimony Offered by Mrs. Watson*

In deciding whether Mrs. Watson's expert witness, Mr. Sevart, should be permitted to testify regarding alleged design defects to the lifttruck and the lack of adequate warn-

ings, the circuit court applied the gatekeeping function for determining the admissibility of expert scientific testimony that was first adopted by this Court in *Wilt v. Buracker,* 191 W.Va. 39, 443 S.E.2d 196 (1993), and further explained in *Gentry v. Mangum,* 195 W.Va. 512, 466 S.E.2d 171 (1995). After performing a *Wilt/Gentry* analysis, the circuit court concluded that Mr. Sevart's testimony was inadmissible.

Mrs. Watson argues that the circuit court erred by relying on the *Wilt/Gentry* standard to exclude her expert's testimony. Because Mr. Sevart's testimony was based upon his education, training, experience, and a review of data reasonably relied on by engineering experts, rather than on the scientific method, Mrs. Watson contends that the circuit court should have made its determination under Rule 702 of the West Virginia Rules of Evidence. She argues further that any argument regarding the methodology utilized by her expert in developing his opinions go to the weight of his testimony and not its admissibility. Nacco responds that the real question is whether Mr. Sevart should have been permitted to give expert testimony based solely upon his education, training, and experience in general, and with complete disregard for any reliable foundational basis for his opinion in the instant case.

In *Wilt v. Buracker,* this Court adopted a standard that was established by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). In this regard, the *Wilt* Court held, in Syllabus point 2, that

In analyzing the admissibility of expert testimony under Rule 702 of the West Virginia Rules of Evidence, the trial court's initial inquiry must consider whether the testimony is based on an assertion or inference derived from the scientific methodology. Moreover, the testimony must be relevant to a fact at issue. Further assessment should then be made in regard to the expert testimony's reliability by considering its underlying scientific methodology and reasoning. This includes an assessment of (a) whether the scientific theory and its conclusion can be and have

been tested; (b) whether the scientific theory has been subjected to peer review and publication; (c) whether the scientific theory's actual or potential rate of error is known; and (d) whether the scientific theory is generally accepted within the scientific community.

191 W.Va. 39, 443 S.E.2d 196.

■ We later clarified our *Wilt* holding by explaining:

The question of admissibility under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and *Wilt v. Buracker,* 191 W.Va. 39, 443 S.E.2d 196 (1993), *cert. denied,* 511 U.S. 1129, 114 S.Ct. 2137, 128 L.Ed.2d 867 (1994) only arises if it is first established that the testimony deals with "scientific knowledge." "Scientific" implies a grounding in the methods and procedures of science while "knowledge" connotes more than subjective belief or unsupported speculation. In order to qualify as ["]scientific knowledge,["] an inference or assertion must be derived by the scientific method. It is the circuit court's responsibility initially to determine whether the expert's proposed testimony amounts to "scientific knowledge" and, in doing so, to analyze not what the experts say, but what basis they have for saying it.

Syl. pt. 6, *Gentry v. Mangum,* 195 W.Va. 512, 466 S.E.2d 171. As *Gentry* plainly demonstrates, the *Wilt* gatekeeper function "only arises if it is first established that the testimony deals with 'scientific knowledge.' " *Id.*

■ In the present case, the circuit court reviewed Mr. Sevart's deposition testimony and other documents related to his testimony and concluded that, because Mr. Sevart would testify as an expert in the field of engineering, his proposed testimony was scientific and, therefore, subject to a *Wilt/Gentry* analysis. We have similarly reviewed Mr. Sevart's deposition, his report, the parties arguments, and relevant case law, and we find that the circuit court erred in determining that Mr. Sevart's proposed testimony was scientific. We observe nothing in the record before us demonstrating that Mr. Sevart's expert opinion testimony is "ground[ed] in the methods and procedures

of science." Syl. pt. 6, in part, *Gentry*. As we found in *Gentry*, "[t]he proffered testimony *sub judice* does not present the kind of 'junk science' problem that *Daubert/Wilt* meant to address." 195 W.Va. at 526, 466 S.E.2d at 185. Here, Mr. Sevart did not base his testimony on any type of testing that utilized the scientific method. Rather, his opinion was based on his education, years of experience, review of over one thousand accidents involving the type of machinery herein involved, and his review of reports involving the instant accident.

In addition, and contrary to the circuit court's conclusion, we observe that numerous courts, including the Supreme Court of the United States, have generally considered testimony in the field of engineering as technical rather than scientific. In *Kumho Tire Company, Ltd. v. Carmichael*, the Supreme Court of the United States acknowledged that, while "disciplines such as engineering rest upon scientific knowledge," 526 U.S. 137, 148, 119 S.Ct. 1167, 1174, 143 L.Ed.2d 238, 250 (1999), engineers are not scientists and, therefore, the Court had to determine how its prior holding in *Daubert* applied to "the testimony of engineers and other experts who are not scientists." 526 U.S. at 141, 119 S.Ct. at 1171, 143 L.Ed.2d at 246.[6]

Similarly, in a pre-*Kumho* case[7] before the United States District Court for the District of South Carolina, the court was faced with a question very similar to that now before this Court. *Thornton v. Caterpillar, Inc.*, 951 F.Supp. 575 (1997). The *Thornton* court was presented with a defense motion to exclude or limit the testimony of an engineer pertaining to design flaws in a bucket loader and the lack of adequate warnings accompanying that piece of equipment. The defense argued that the expert's testimony should be excluded under the *Daubert* guidelines. The district court, however, refused to apply *Daubert*. The court concluded that "[e]ngineers

can be classified as possessing either technical or other specialized knowledge but by definition they can never be legitimately classified as scientists." *Thornton*, 951 F.Supp. at 577. By way of explaining its conclusion, the court elaborated:

> Random House Dictionary defines "technical" as anything "pertaining to or connected with the mechanical or industrial arts and the applied sciences."[8] Technical knowledge is the knowledge of these mechanical and industrial arts and the applied sciences.
>
> Random House Dictionary defines one who specializes as one who pursues "some special line of study, work, etc."[9] Specialized knowledge refers to any knowledge focused on a particular area of study, profession, or experience.
>
> Scientific knowledge differs from technical and specialized knowledge in that it is a validation. Scientific knowledge is the process of formulating a hypothesis and then engaging in experimentation or observation to verify or falsify that hypothesis. It is this knowledge garnered from experimentation and observation that was offered as evidence in *Daubert*.

*Id.* (footnote numbers altered from original). Finally, the court opined that "[p]laintiff's expert, Dr. Melvin K. Richardson, Ph.D. is a mechanical engineer who has given opinions with regard to design and lack of adequate warning. This type of expertise is clearly not within the narrowly limited area of unique, untested and novel scientific evidence as enunciated in *Daubert*." *Id.* at 578. *See also Rudd v. General Motors Corp.*, 127 F.Supp.2d 1330, 1335 (M.D.Ala.2001) (acknowledging that engineering is not scientific as contemplated in *Daubert* by stating that "*Kumho* affirmed the potential applicability of the *Daubert* factors to testimony that is technical-, engineering-, or experi-

---

6. See *infra* note 11.

7. It is significant that this is a pre-*Kumho* case. Before *Kumho* was handed down by the Supreme Court of the United States, the standards for the admissibility of expert testimony in the federal courts and in West Virginia were basically the same. Following *Kumho*, however, the federal standards differ significantly from the

standards in effect in West Virginia. *See infra* note 11.

8. Random House Dictionary of the English Language 1950 (2d ed.1987).

9. Random House Dictionary of the English Language 1831 (2d ed.1987).

enced-based, the *Kumho* Court also made it clear that ... the *Daubert*-type analysis should not be used to disfavor expert testimony grounded in experience or engineering practice rather than in pure scientific theory."); *Saad v. Shimano Am. Corp.*, No. 98 C 1204, 2000 WL 1036253, at *4 (N.D.Ill. July 24, 2000) (mem.op.) (demonstrating recognition that engineering is not *Daubert* type science by commenting, with regard to the application of *Kumho*, "[t]he *Daubert* standard applies to all expert testimony, whether it relates to areas of traditional scientific competence or whether it is founded on engineering principles or other technical or specialized expertise."); *Dartey v. Ford Motor Co.*, 104 F.Supp.2d 1017, 1021 (N.D.Ind.2000) (recognizing distinction between scientific and engineering evidence by explaining that "[t]he Supreme Court in *Daubert* and more recently in *Kumho* ... provided further guidance on the court's task under Fed. R.Evid. 702, by emphasizing the district court's 'gatekeeping' function to ensure that expert testimony, be it traditional scientific evidence *or founded on engineering principles or other technical or specialized knowledge,* is both reliable and relevant" (emphasis added) (citing *Kumho,* 526 U.S. at 141, 119 S.Ct. at 1171 and 1176)); *Pillow v. General Motors Corp.,* 184 F.R.D. 304, 306 (E.D.Mo.1998) (distinguishing scientific evidence from testimony of engineers by observing, in a pre-*Kumho* opinion, that "[a]lthough the Supreme Court's decision in *Daubert* involved 'scientific' evidence, the Eighth Circuit has similarly applied the teachings of *Daubert* to *cases involving expert testimony from engineers—seemingly involving 'technical or other specialized knowledge.'*" (emphasis added) (citations omitted)); *Fireman's Fund Ins. Co. v. Xerox Corp.,* 30 F.Supp.2d 823, 829 (1998) (finding expert engineer's testimony was not based upon scientific knowledge because engineer was "not relying on any particular methodology or technique for his expert testimony.... Rather, [he] reached his expert conclusions by drawing upon general electrical engineering principles and his twenty-five years of experience investigating electrical accidents." (internal citation omitted)).[10]

■ Based upon the foregoing, we hold that unless an engineer's opinion is derived from the methods and procedures of science, his or her testimony is generally considered technical in nature, and not scientific. Therefore, a court considering the admissibility of such evidence should not apply the gatekeeper analysis set forth by this Court in *Wilt v. Buracker,* 191 W.Va. 39, 443 S.E.2d 196 (1993), and *Gentry v. Mangum,* 195 W.Va. 512, 466 S.E.2d 171 (1995).[11]

10. *But see Gammill v. Jack Williams Chevrolet, Inc.,* 972 S.W.2d 713, 721 (Tex.1998) (stating that "[m]echanical engineering is science").

11. The United States Supreme Court, in *Kumho Tire Company, Ltd. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), ultimately concluded that the gatekeeper function of *Daubert* also applied to expert testimony based on technical or other specialized knowledge. In response to *Daubert* and *Kumho,* Rule 702 of the Federal Rules of Evidence was amended, effective December 1, 2000, to read as follows:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

To date, this Court has declined to adopt the current federal practice, as expressed in *Kumho,* of applying the *Daubert/Wilt* gatekeeper function to expert testimony based upon technical or other specialized knowledge. *See, e.g., West Virginia Div. of Highways v. Butler,* 205 W.Va. 146, 151–52 n. 4, 516 S.E.2d 769, 774–75 n. 4 (1999) ("We decline to adopt the *Kumho* analysis in this case."). At this time, the majority declines to expressly address whether we will adopt the new federal procedure regarding expert testimony. However, the author of this opinion, separate from the majority, does not believe that *Kumho* would be a death knell to the admission of non-scientific expert testimony. *See Jones v. Patterson Contracting, Inc.,* 206 W.Va. 399, 407, 524 S.E.2d 915, 923 (1999) (Davis, J., concurring in part, dissenting in part). Indeed, *Kumho* has been approved by a majority of state courts who have taken it under consideration. *See M.G. Bancorporation, Inc. v. Le Beau,* 737 A.2d 513 (Del.Super.Ct.1999) (approving Kumho with discussion); *Goodyear Tire and Rubber Co. v. Thompson,* 11 S.W.3d 575 (Ky.2000) (same); *Independent Fire Ins. Co. v. Sunbeam Corp.,* 755 So.2d 226 (La.2000) (same); *Case of Canavan,*

Applying the foregoing holding, we conclude that the circuit court was clearly wrong in applying a *Wilt/Gentry* gatekeeper analysis to the testimony of Mr. Sevart. Rather, the proper analysis of the admissibility of Mr. Sevart's testimony is conducted pursuant to Rule 702 of the West Virginia Rules of Evidence. Rule 702 states: "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." We have previously interpreted Rule 702 as containing three major requirements: "(1) the witness must be an expert; (2) the expert must testify to scientific, technical or specialized knowledge; and (3) the expert testimony must assist the trier of fact." *Gentry*, 195 W.Va. at 524, 466 S.E.2d at 183.

As to the first requirement of Rule 702, the circuit court has acknowledged that there is no dispute between the parties that Mr. Sevart is qualified to testify as an expert engineer. In addition, as to the second requirement, we have determined, as explained above, that Mr. Sevart's testimony is technical in nature. Consequently, we must address only the final requirement of whether his testimony "will assist the trier of fact to

---

432 Mass. 304, 733 N.E.2d 1042 (2000) (same); *State v. Southern*, 294 Mont. 225, 980 P.2d 3 (1999) (same); *Gilson v. State*, 8 P.3d 883 (Okla. Crim.App.2000) (same), *petition for cert. filed* (Okla. Jan. 16, 2001) (No. 00–8369); *DiPetrillo v. Dow Chem. Co.*, 729 A.2d 677 (R.I.1999) (same); *First Western Bank Wall v. Olsen*, 621 N.W.2d 611 (S.D.2001) (approving Kumho without discussion); *Kroger Co. v. Betancourt*, 996 S.W.2d 353 (Tex.App.1999) (approving Kumho with discussion); *State v. Kinney*, 762 A.2d 833 (Vt.2000) (same); *Bunting v. Jamieson*, 984 P.2d 467 (Wyo. 1999) (same). *But see Logerquist v. McVey*, 196 Ariz. 470, 1 P.3d 113 (2000) (rejecting both Kumho and Daubert); *Bahura v. S.E.W. Investors*, 754 A.2d 928 (D.C.2000) (same); *Goeb v. Tharaldson*, 615 N.W.2d 800 (Minn.2000) (same); *Long v. Missouri Delta Med. Ctr.*, 33 S.W.3d 629 (Mo.Ct. App.2000) (same).

The author of this opinion believes that it is the restrictive interpretation of *Kumho* anticipated by some commentators that is causing confusion. *See, e.g.*, Adam J. Siegel, Note, *Setting Limits on Judicial Scientific, Technical, and Other Specialized Fact–Finding in the New Millennium*, 86 Cornell L.Rev. 167 (Nov.2000); Mark Lewis and Mark Kitrick, *Kumho Tire Co. v. Carmichael: Blowout from the Overinflation of Daubert v. Merrell Dow Pharmaceuticals*, 31 U. Tol. L.Rev. 79 (Fall 1999). However, there are two specific reasons that *Kumho does not* realistically present any new barrier to the admissibility of expert testimony that is based on technical or other specialized knowledge. First, the *Kumho* test is a flexible one that does not require application of the specific factors suggested in *Daubert*, which were also intended to be applied flexibly. The *Kumho* Court itself stated:

We agree with the Solicitor General that "[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his [or her] testimony." ... The conclusion, in our view, is that we can neither rule out, nor rule in, for all cases and for all time the applicability of the

factors mentioned in *Daubert*, nor can we now do so for subsets of cases categorized by category of expert or by kind of evidence. Too much depends upon the particular circumstances of the particular case at issue.

526 U.S. at 150, 119 S.Ct. at 1175, 143 L.Ed.2d at 251–52. *See also id. at* 152, 119 S.Ct. at 1176, 143 L.Ed.2d at 252 (concluding "the trial judge *must have considerable leeway* in deciding in a particular case how to go about determining whether particular expert testimony is reliable."). Second, *Kumho*, as an extension of *Daubert*, applies only to expert testimony that is not subject to judicial notice. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 n. 11, 113 S.Ct. 2786, 2796 n. 11, 125 L.Ed.2d 469, 482 n. 11 ("Of course, well-established propositions are less likely to be challenged than those that are novel, and they are more handily defended. Indeed, theories that are so firmly established as to have attained the status of scientific law, such as the laws of thermodynamics, properly are subject to judicial notice under Federal Rule of Evidence 201."); *Gentry v. Mangum*, 195 W.Va. 512, 522, 466 S.E.2d 171, 181 ("Actually, most scientific validity issues will be resolved under judicial notice pursuant to Rule 201. Indeed, most of the cases in which expert testimony is offered involve only qualified experts disagreeing about the interpretation of data that was obtained through standard methodologies. *Daubert/Wilt* is unlikely to impact upon those cases. Therefore, circuit courts are right to admit or exclude evidence without 'reinventing the wheel' every time by requiring parties to put on full proof of the validity or invalidity of scientific principles. Where judicial notice is appropriate, the circuit court should use it." (footnote omitted)); Syl. pt. 1, *Wilt v. Buracker*, 191 W.Va. 39, 443 S.E.2d 196 ("Under Rule 702 of the West Virginia Rules of Evidence, there is a category of expert testimony based on scientific methodology that is so longstanding and generally recognized that it may be judicially noticed and, a trial court need not ascertain the basis for its reliability.").

understand the evidence or to determine a fact in issue." W. Va. R. Evid. 702. *See also* Syl. pt. 1, *State v. McCoy*, 179 W.Va. 223, 366 S.E.2d 731 (1988) ("Expert testimony that helps the jury to understand the evidence or determine a fact in issue is admissible under West Virginia Rule of Evidence 702.").

It has been acknowledged that "[t]estimony from an expert is presumed to be helpful." II Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 7–2(A)(2), at 32 (3d ed.1994) (citing *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir.1993)). Basically, the helpfulness requirement simply means that the testimony does not concern something that is within the common knowledge and experience of a lay juror. Cleckley, *supra* § 7–2(A)(2), at 32–34. Beyond that, the question of whether expert testimony will assist the trier of fact goes primarily to the relevance of the evidence. *Id.* at § 7–2(A), at 23 (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)). *See also Wilt v. Buracker*, 191 W.Va. 39, 46 n. 12, 443 S.E.2d 196, 203 n. 12 ("As we stated in *Gilman v. Choi*, 185 W.Va. 177, 179, 406 S.E.2d 200, 202 (1990)[, *overruled on other grounds by Mayhorn v. Logan Med. Found.*, 193 W.Va. 42, 454 S.E.2d 87 (1994) ]: 'Rule 702 of the *West Virginia Rules of Evidence* ... is concerned primarily with the *relevancy* of expert testimony. *See* syl. pts. 1–2, *State v. McCoy*, 179 W.Va. 223, 366 S.E.2d 731 (1988).' (Emphasis added).").

The Rules of Evidence themselves define what is meant by "relevance." In this regard, the Rules state " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." W. Va. R. Evid. 401. This standard is a liberal one that favors admissibility:

> Under Rule 401, evidence having *any* probative value whatsoever can satisfy the relevancy definition. Obviously, this is a liberal standard favoring a broad policy of admissibility. For example, the offered evidence does not have to make the existence of a fact to be proved more probable than not or provide a sufficient basis for sending the issue to the jury.

*McDougal v. McCammon*, 193 W.Va. 229, 236, 455 S.E.2d 788, 795 (1995).

■ In the instant case, Mrs. Watson has asserted two basic claims against Nacco: that the lifttruck was defectively designed, and that Nacco did not provide appropriate warnings. Mr. Sevart's proposed testimony addresses both of these issues. We believe that questions involving the design of and appropriate warnings for lifttrucks are not within the common knowledge and experience of a lay juror. Cleckley, *supra* § 7–2(A)(2), at 32–34. Certainly, therefore, Mr. Sevart's proposed testimony would likely aid the trier of fact in making its determinations of whether the lifttruck was in fact defective and whether it lacked appropriate warnings. Consequently, we find the circuit court erred, and abused its discretion, in excluding Mr. Sevart's testimony on the topics of design defect and lack of adequate warnings.

■ Nacco argues at great length that Mr. Sevart's testimony should be excluded because his opinions are unreliable. In this respect, Nacco basically contends that Mr. Sevart failed to perform any test or other method of studying the accident, that his opinions as to how Mr. Sevart was ejected from the lifttruck and how his fatal injuries occurred have no basis, and that he has offered no evidence supporting his contention that his proposed doors and warnings have been shown to enhance the safety of a stand-up lifttruck operator under circumstances similar to those involved in Mr. Watson's accident.

We have previously discussed similar complaints regarding expert testimony and, with regard to any lack of knowledge on the part of the expert, we have stated:

> Any lack of knowledge ... goes to the weight of the testimony and not its admissibility. Once [an expert] testifies ... the [opposing party] can cross-examine [the expert] and reveal any weaknesses in his [or her] opinion. "Once a witness is permitted to testify, it is within the province of the jury to evaluate the testimony, credentials, background, and qualifications of

the witness to address the particular issue in question. The jury may then assign the testimony such weight and value as the jury may determine."

*West Virginia Div. of Highways v. Butler,* 205 W.Va. 146, 152, 516 S.E.2d 769, 775 (1999) (quoting *Cargill v. Balloon Works, Inc.,* 185 W.Va. 142, 147, 405 S.E.2d 642, 647 (1991)). We have similarly declared that "[d]isputes as to the strength of an expert's credentials, mere differences in the methodology, or lack of textual authority for the opinion go to weight and not to the admissibility of their testimony." *Gentry,* 195 W.Va. at 527, 466 S.E.2d at 186. *See also* Cleckley, *supra* § 7–2(A)(1) at 25 ("an expert does not need personal, first-hand knowledge to render an opinion."); *Id.* at 529, 466 S.E.2d 171 ("One knowledgeable about a particular subject need not be precisely informed about all the details of the issues raised in order to offer an opinion but merely possess enough information to assist the jury. Whether the witness is the best expert witness on the specific subject is a matter that goes to weight of testimony and not to qualifications.").

We find that Nacco's criticisms address the weight and not the admissibility of Mr. Sevart's testimony. Consequently, Nacco should address its criticisms of Mr. Sevart's testimony at trial through traditional methods such as vigorous cross-examination, rebuttal testimony by its own expert, and instructions on Mrs. Watson's burden of proof. *See Gentry,* 195 W.Va. at 525–26, 466 S.E.2d at 184–85 (discussing liberal thrust of rules and admissibility of expert testimony, and noting that " '[c]onventional devices,' like vigorous cross-examination, careful instructions on the burden of proof, and rebuttal evidence, may be more appropriate instead of the 'wholesale exclusion' of expert testimony

under Rule 702." (citing *Daubert,* 509 U.S. at 596, 113 S.Ct. at 2798, 125 L.Ed.2d at 484)).

## B. Expert Testimony by Engineer on Causation and Enhancement of Injuries

According to his preliminary report and deposition testimony, Mrs. Watson's expert witness, Mr. Sevart, would testify at trial that Mr. Watson's injuries were caused or enhanced by certain defects in the lifttruck he was operating at the time of his death, namely the lack of side doors and of adequate warnings on what to do in the event the lifttruck should tip over. Specifically, Mr. Sevart opines that Mr. Watson could have avoided being crushed in the accident by staying inside the operator's compartment. According to Mr. Sevart, side doors would have kept Mr. Watson inside that compartment, and an appropriate warning would have instructed him to stay inside the lifttruck, brace himself, and lean away from the direction of the tip or fall.[12]

Mr. Sevart stated in his deposition that he based his opinion, in part, on an OSHA report of the accident. The OSHA report contained a description of the accident, the measurement of the height of the fall, and listed Mr. Watson's cause of death as severe crushing. In addition, Mr. Sevart relied on his review of more than one thousand accident reports involving stand-up lifttrucks, his background and experience (particularly his experience in designing operator protective systems for numerous types of off-road machines), technical literature on operator protection for on-road and off-road vehicles,[13] and "the basic concept that it takes energy to cause injury, and if you keep the energy of the forklift out of the operator's body then the operator is only going to have those injuries that his body would cause." [14] As to the severity of Mr. Watson's injuries, Mr.

---

12. Mr. Sevart named numerous standards that he believed were violated by the absence of such a warning.

13. Mr. Sevart explained that this literature included reports on the effectiveness of operator protective systems and the tolerance of the human body to falls. He also explained that a conscious person can fall approximately ten feet before there is a high probability of severe injury because "the human body has a certain degree of

compliance, which reduces the shock or impact into the body," and a conscious person "can control that to a certain extent." Mr. Watson fell approximately five feet.

14. Mr. Sevart explained that if Mr. Watson had stayed inside the lifttruck during the fall, the force of energy to which he would have been exposed was his weight multiplied by the drop height.

Sevart specifically opined that "[i]f a door had been present I would expect Mr. Watson to have experienced some soft tissue type injuries; but nothing of a permanently disabling nature." [15] He also observed that Mr. Watson was probably ejected out the side of the lifttruck. Mr. Sevart based this opinion on the height of the front console and the rear of the vehicle, which Mr. Sevart felt were high enough to restrain the operator, and the position where Mr. Watson was actually caught under the vehicle.

The circuit court analyzed Mr. Sevart's testimony under Rule 702 of the West Virginia Rules of Evidence and concluded that, while Mr. Sevart qualified as an expert in the field of engineering, his "testimony in the areas of causation of injuries and the enhancement of injuries" was "outside his expertise." The circuit court opined that "medical causation and injury enhancement testimony requires testimony of a medical expert." Consequently, the court excluded that portion of Mr. Sevart's testimony related to causation and enhancement.

Mrs. Watson argues that the circuit court erred in concluding Mr. Sevart was not qualified to testify regarding the causation and enhancement of injuries. Mrs. Watson asserts that, contrary to the circuit court's conclusion, such testimony does not require a medical expert. She contends that Mr. Sevart's extensive experience in forklift design and industrial accident cases qualifies him to provide this testimony. Nacco responds that Mr. Sevart has had no training in medical science and, therefore, lacks the qualifications to render an opinion as to the cause of Mr. Watson's death or the enhancement of his injuries. Consequently, the circuit court

correctly excluded Mr. Sevart's testimony that his proposed design changes would have saved Mr. Watson's life.[16]

▪ In *Gentry v. Mangum*, 195 W.Va. 512, 466 S.E.2d 171 (1995), this Court conducted a rather thorough review of the requirements necessary for a witness to qualify as an expert. In Syllabus point 5 of *Gentry* we held:

In determining who is an expert, a circuit court should conduct a two-step inquiry. First, a circuit court must determine whether the proposed expert (a) meets the minimal educational or experiential qualifications (b) in a field that is relevant to the subject under investigation (c) which will assist the trier of fact. *Second, a circuit court must determine that the expert's area of expertise covers the particular opinion as to which the expert seeks to testify.*

(Emphasis added). With regard to the second part of the above quoted test, we further explained in *Gentry* that

The second part of the expert qualification criteria is assuring that the expert has expertise in the particular field in which he testifies. Here too, a circuit court has reasonable discretion. In discussing how much of a specialist should the expert be, a circuit court must always remember that the governing principle is whether the proffered testimony can assist the trier of fact. Necessarily the "helpfulness" standard calls for decisions that are very much *ad hoc*, for the question is always whether a particular expert can help resolve the particular issue at hand.

---

**15.** Upon more specific questioning, Mr. Sevart opined that if the lifttruck driven by Mr. Watson had been equipped with side doors and if Mr. Watson made no attempt to restrain himself, "he could possibly have some broken bones. Particularly to upper extremity or facial bones," and broken bones in his arms. He also stated that he did not believe that Mr. Watson would have suffered broken bones in the neck or shoulders. He opined that these injuries would have resulted from Mr. Watson's contact with the inside of the operator's compartment of the lifttruck.

**16.** In addition, Nacco raises the question of whether Mr. Watson's death actually resulted from his being crushed by the lifttruck, or wheth-

er, considering his medical history, there may have been some other cause. We find this point does not preclude Mr. Sevart from rendering his opinion regarding the alleged defectiveness of the lifttruck and the resulting causation or enhancement of Mr. Watson's injuries. It would appear that, whether or not they were the actual cause of Mr. Watson's death, the crushing injuries he sustained were sufficient to cause death, and, as we understand them, Mr. Sevart's theories are that if the lifttruck had not been defective, then Mr. Watson would not have been crushed. These are, of course, issues for the jury to decide.

195 W.Va. 512, 526, 466 S.E.2d 171, 185. Moreover, the *Gentry* Court recognized that the Rules of Evidence are liberal and that a trial court should "err on the side of admissibility." 195 W.Va. at 525, 466 S.E.2d at 184 ("What must be remembered, however, is that there is no 'best expert' rule. Because of the 'liberal thrust' of the rules pertaining to experts, circuit courts should err on the side of admissibility." (citing II Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 7–2(A), at 24 (" '[t]his standard is very generous and follows the general framework of the federal rules which favors the admissibility of all relevant evidence' "))). In addition, the *Gentry* court observed that

> "West Virginia Rule of Evidence 702 enunciates the standard by which the qualification of an individual as an expert witness will be determined. It cannot encompass every nuance of a specific factual matter or a particular individual sought to be qualified. It simply requires that the witness must, through knowledge, skill, experience, training, or education, possess scientific, technical, or other specialized knowledge which will assist the trier of fact to understand the evidence or to determine a fact in issue. *It cannot be interpreted to require ... that the experience, education, or training of the individual be in complete congruence with the nature of the issue sought to be proven.*"

195 W.Va. at 525, 466 S.E.2d at 184 (emphasis added) (quoting *Cargill v. Balloon Works, Inc.*, 185 W.Va. 142, 146–47, 405 S.E.2d 642, 646–47 (1991)).

 As we acknowledged in *Gentry*, pursuant to Rule 702, an expert may testify if he or she is " 'qualified as an expert by knowledge, skill, experience, training, or education.' " 195 W.Va. at 520, 466 S.E.2d at 179 (quoting W. Va. R. Evid. 702). It has been noted that the use in Rule 702 of the disjunctive "or" allows an expert to be qualified by any of the five methods listed. *See* II Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 7–2(A)(1), at 24 (1994) ("[I]nasmuch as the rule is disjunctive, a person may qualify to render expert testimony in any one of the five ways listed.").

Considering these criteria and the liberal thrust of Rule 702 that was described in *Gentry*, we find that Mr. Sevart is qualified to give trial testimony, comparable with that contained in his deposition, regarding the causation and enhancement of Mr. Watson's injuries. *See, e.g., Tracy v. Cottrell ex rel. Cottrell*, 206 W.Va. 363, 524 S.E.2d 879 (1999) (concluding that circuit court erred in excluding testimony of nonmedical coroner regarding cause of death); *West Virginia Div. of Highways v. Butler*, 205 W.Va. 146, 516 S.E.2d 769 (1999) (finding lower court erred by refusing to allow testimony on value of property by corporate real estate manager who was not a licenced appraiser).

In the instant case, Mr. Sevart explained that, in addition to his engineering education and training, he had examined reports of more than one thousand accidents involving stand-up lifttrucks and had analyzed the injuries that resulted from those accidents. We conclude that his experience in analyzing so many accidents involving the type of equipment herein involved, along with the knowledge he possesses regarding the forces to which a human body is exposed under certain circumstances, such as a fall, qualify him to offer an opinion as to the extent of injuries that would have been expected had Mr. Watson stayed within the operator's compartment of the lifttruck. Mr. Sevart's testimony in this regard does not rely upon medical theories or diagnosis, rather he plainly limited his opinion to his understanding of the aforementioned forces and his review of similar accidents. *See, e.g., Ault v. Navistar Int'l Transp. Corp.*, 880 F.2d 414 (6th Cir.1989) ("Table of Decisions Without Reported Opinions"), *available at* 1989 WL 84337 (unpublished opinion finding that evidence regarding survivability of accident did not require medical expert and testimony on the issue offered by an accident reconstruction expert was admissible); *Roe v. Deere & Co., Inc.*, 855 F.2d 151 (3d Cir.1988) (concluding that lower court abused its discretion by excluding Mr. Sevart's expert opinion testimony regarding extent of injuries that would have been sustained if equipment in question had

been equipped with safety equipment advocated by Mr. Sevart).[17]

Finally, we conclude that Mr. Sevart's testimony on the causation and enhancement of Mr. Watson's injuries would assist the trier of fact. *Gentry,* 195 W.Va. 512, 526, 466 S.E.2d 171, 185 ("In discussing how much of a specialist should the expert be, a circuit court must always remember that the governing principle is whether the proffered testimony can assist the trier of fact."). At issue in the instant case is whether the defects to the lifttruck alleged by Mrs. Watson caused or enhanced Mr. Watson's injuries. Thus, Mr. Sevart's opinions as to the type of injuries that Mr. Watson would have been expected to sustain had the lifttruck been equipped with the safety devices advocated by Mr. Sevart would clearly assist the jury in deciding this issue. For the foregoing reasons, we find that the circuit court erred, and abused its discretion, in excluding Mr. Sevart's testimony concerning the causation and enhancement of Mr. Watson's injuries.

## IV.

## CONCLUSION

The circuit court based its grant of summary judgment in favor of Nacco on its prior exclusion of Mr. Sevart's testimony. The court reasoned that *Morningstar v. Black &*

*Decker Mfg. Co.,* 162 W.Va. 857, 253 S.E.2d 666 (1979), which sets forth the standards for a products liability case such as Mrs. Watson's, required the testimony of an expert witness. Because the circuit court's exclusion of Mr. Sevart's testimony deprived Mrs. Watson of an expert witness to support her claims, the court found there existed no triable facts in the case. Mrs. Watson argues before this Court that the circuit court erred in concluding that *Morningstar* mandates the testimony of an expert witness. Because we have concluded that the circuit court erred in excluding Mr. Sevart's testimony, we need not address this issue. Mr. Sevart's testimony should have been admitted by the trial court and its grant of summary judgment based upon its exclusion of that testimony was in error. Consequently, the January 28, 2000, and March 8, 2000, orders of the Circuit Court of Cabell County are reversed, and this case is remanded for additional proceedings not inconsistent with this opinion.

Reversed and remanded.

---

**17.** Although Nacco has cited cases where courts have found that an engineer was not qualified to give expert opinion testimony concerning the cause of certain injuries, we find those cases are distinguishable in that the testimony of the engineers was more akin to medical testimony than the opinions offered by Mr. Sevart in the instant case. *See Goodwin v. MTD Prods., Inc.,* 232 F.3d 600 (7th Cir.2000) (finding that trial court properly excluded engineer's opinion that a wing nut could not have caused the type of eye injury sustained by plaintiff); *Combs v. Norfolk & W. Ry. Co.,* 256 Va. 490, 507 S.E.2d 355 (1998) (concluding that trial court properly excluded testimony of biomechanical engineer discussing medical characteristics of a degenerated disc and stating that a specific act may have caused it to become symptomatic, but did not rupture the disc).