**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**

**State of West Virginia,
Plaintiff Below, Respondent**

**v.)  No. 23-557** (Cabell County 18-F-280, 22-F-95)

**Antwon Starkey,
Defendant Below, Petitioner**

**MEMORANDUM DECISION**

Petitioner Antwon Starkey appeals the Circuit Court of Cabell County's August 25, 2023, order entered following his convictions for second-degree murder and felon in possession of a firearm.[1] The petitioner claims that the court erred when it refused to admit expert testimony on the issue of provocation. Upon our review, finding no substantial question of law and no prejudicial error, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21(c).

In August 2018, the petitioner was indicted for murder and felon in possession of a firearm after the shooting death of Kafrederick McEachin at a gas station in Huntington, West Virginia. Surveillance video showed Mr. McEachin holding the door open as the petitioner entered the gas station on December 12, 2017. The petitioner pulled a pistol out of his pocket and began shooting at Mr. McEachin, who attempted to run away. Mr. McEachin collapsed in the parking lot of the gas station, and the petitioner again shot Mr. McEachin as he lay on the ground, killing him. It is undisputed that the petitioner shot Mr. McEachin because he believed that Mr. McEachin was involved in a shooting on November 29, 2017, during which the petitioner's stepdaughter was injured.

A forensic evaluator[2] determined that the petitioner was competent and criminally responsible but went on to opine that the petitioner had diminished capacity at the time of the

---

[1] The petitioner appears by counsel Jason Gain. The State appears by Attorney General John B. McCuskey and Deputy Attorney General Andrea Nease. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel.

[2] *See* W. Va. Code § 27-6A-2(a) (providing that a circuit court may appoint a qualified forensic evaluator to conduct "both a competency evaluation and a criminal responsibility or diminished capacity evaluation").

shooting because "it is not difficult to imag[in]e any reasonable person losing control if confronted with the man they believed had seriously harmed their daughter and placed their family in harm's way." The forensic evaluator also stated that "in the case of Mr. Starkey, it appears that the killing was in reaction to provocation that would cause a 'reasonable person' to lose control." The forensic evaluator further opined that there was "[h]ardly time for a reasonable person to cool off, thus the final tragic blow occurred[,]" and that a "'reasonable person,' so provoked, would not have time to cool off or regain composure. . . . [T]he provocation that he experienced is likely a mitigating factor in his actions."[3] Based upon this evaluation, the petitioner intended to argue at trial that he had diminished capacity because he was provoked by Mr. McEachin before he shot and killed him.

The State filed a motion in limine to exclude the forensic evaluator's provocation/reasonable person opinions. At a *Daubert*[4] hearing on the State's motion, the forensic evaluator explained the basis for her opinion that the petitioner had diminished capacity, but she could not cite any empirical studies to support her opinion that "a reasonable person so provoked would not have time to cool off or regain composure." The circuit court granted the State's motion to exclude, finding that the forensic evaluator's provocation/reasonable person opinions were inadmissible under *Daubert* and Rule 702 of the West Virginia Rules of Evidence because they did not assist the trier of fact in understanding the evidence or determining a fact in issue, and because they were not adequately supported by reliable scientific evidence. The court further found that

> [w]hether [the petitioner] acted reasonably and whether [the petitioner] was provoked are themselves factual determinations the jury must make, and a lay juror can make these factual determinations using their everyday common knowledge and experience. Because the provocation/reasonable person opinions concern matters within the everyday common knowledge and experience of a lay juror, these opinions would not be helpful to the jury, and they would create a substantial risk of supplanting a jury's independent exercise of common sense.

The forensic evaluator did not testify at the petitioner's trial.

At trial, the petitioner stipulated that he shot and killed Mr. McEachin on December 12, 2017, at the Huntington Mart, and that he had "a qualifying felony offense . . . [that] satisfies the element required in felon in possession of a firearm." Consequently, the only issue at trial was the petitioner's state of mind when he shot Mr. McEachin. Both the State and the petitioner presented evidence of the shooting of the petitioner's stepdaughter and the petitioner's reaction to it.

---

[3] The circuit court referred to these as the "provocation/reasonable person opinions."

[4] *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993) (ruling that "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable"); *accord* Syl. Pt. 3, *Gentry v. Mangum*, 195 W. Va. 512, 466 S.E.2d 171 (1995).

After deliberation, the jury convicted the petitioner of second-degree murder and felon in possession of a firearm. The circuit court sentenced the petitioner to forty years of imprisonment for second-degree murder and ten years of imprisonment, including a recidivist enhancement, for felon in possession of a firearm. The petitioner appeals.

In his sole assignment of error, the petitioner asserts that the circuit court erred in refusing to admit expert testimony on the issue of provocation. The petitioner argues that the forensic evaluator's provocation/reasonable person opinions were admissible because they were based on "other specialized knowledge" as contemplated by Rule 703 of the West Virginia Rules of Evidence.[5] The petitioner also claims that the jury would have benefited from these opinions because it could not "understand or appreciate the intricacies of gangland warfare on their streets and how a person like [the petitioner] would react when he and his family are in the cross hairs." "The admissibility of testimony by an expert witness is a matter within the sound discretion of the trial court, and the trial court's decision will not be reversed unless it is clearly wrong." Syl. Pt. 6, *Helmick v. Potomac Edison Co.*, 185 W. Va. 269, 406 S.E.2d 700 (1991); *see also* Syl. Pt. 4, in part, *Rozas v. Rozas*, 176 W. Va. 235, 342 S.E.2d 201 (1986) (holding that under Rule 702 of the West Virginia Rules of Evidence, "a trial judge has broad discretion to decide whether expert testimony should be admitted, and where the evidence is unnecessary, cumulative, confusing or misleading the trial judge may properly refuse to admit it").

Rule 702 of the West Virginia Rules of Evidence concerns the admissibility of expert testimony. The rule "has three major requirements: (1) the witness must be an expert; (2) the expert must testify to scientific, technical or specialized knowledge; and (3) the expert testimony must assist the trier of fact." *Gentry*, 195 W. Va. at 524, 466 S.E.2d at 183. When determining whether expert testimony will assist the jury, "a circuit court is required to make a common sense inquiry into whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in dispute." *Id.* at 528, 466 S.E.2d at 187 (internal quotation omitted); *Watson v. Inco Alloys Int'l, Inc.*, 209 W. Va. 234, 243, 545 S.E.2d 294, 303 (2001) (ruling that expert testimony is helpful when it concerns matters that are not "within the common knowledge and experience of a lay juror").

In this case, the circuit court considered the proposed expert testimony of the forensic evaluator on provocation and determined that the jury could "make these factual determinations using their everyday common knowledge and experience." Although the petitioner claims that the jury could not possibly understand the petitioner's state of mind when he saw the man who was involved in his stepdaughter's shooting, "such issues are matters which the average juror can understand from the facts surrounding the [petitioner's] conduct at the time of the crime was

---

[5] Rule 703 provides, in part, that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed."

committed based on his own common sense view of human affairs." *See State v. Mitter*, 168 W. Va. 531, 538, 285 S.E.2d 376, 380 (1981). Therefore, we conclude that the court was not clearly wrong and did not abuse its discretion when it excluded the evaluator's opinions because they would not be helpful to the jury to determine a fact in issue.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** March 24, 2026

**CONCURRED IN BY:**

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III